# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2013AP2504-W through 2013AP2508-W, 2014AP296-OA & 2014AP417-W through 2014AP421-W |
| COMPLETE TITLE: | In the Matter of John Doe Proceeding |

State of Wisconsin ex rel. Three Unnamed
Petitioners,
      Petitioner,
  v.
the Honorable Gregory A. Peterson, John Doe
Judge, the Honorable Gregory Potter, Chief Judge
and Francis D. Schmitz, as Special Prosecutor,
      Respondents.

------------------------------------------------

State of Wisconsin ex rel. Two Unnamed
Petitioners,
      Petitioner,
  v.
The Honorable Gregory A. Peterson, John Doe Judge
and Francis D. Schmitz, Special Prosecutor,
      Respondents.

------------------------------------------------

State of Wisconsin ex rel. Francis D. Schmitz,
      Petitioner,
  v.
Honorable Gregory A. Peterson, John Doe Judge,
      Respondent,
Eight Unnamed Movants,
      Interested Party.

## MOTION FOR RECONSIDERATION

| | |
|---|---|
| OPINION FILED: | December 2, 2015 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | Circuit |
|   COUNTY: | Milwaukee, Iowa, Dodge, Dane and Columbia |
|   JUDGE: | Gregory A. Peterson (Reserve) |

JUSTICES:

CONCURRED:

CONCUR/DISSENT:    ABRAHAMSON, J., concurs and dissents. (Opinion Filed)

DISSENTED:

NOT PARTICIPATING:    A.W. BRADLEY, R.G. BRADLEY, J.J., did not participate.
N. PATRICK CROOKS, Jr., passed away while these motions were pending and prior to their final resolution by the court.

ATTORNEYS:

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

Nos. 2013AP2504-W through 2013AP2508-W
    2014AP296-OA
    2014AP417-W through 2014AP421-W
(L.C. Nos. 2013JD11 & 2013JD9 & 2013JD6 & 2013JD1 & 2012JD23)

STATE OF WISCONSIN          :          IN SUPREME COURT

**In the Matter of John Doe Proceeding**

**State of Wisconsin ex rel. Three Unnamed Petitioners,**

          **Petitioner,**

     **v.**

**The Honorable Gregory A. Peterson, John Doe Judge, the Honorable Gregory Potter, Chief Judge and Francis D. Schmitz, as Special Prosecutor,**

          **Respondents.**

_____

**State of Wisconsin ex rel. Two Unnamed Petitioners,**

          **Petitioner,**

     **v.**

**The Honorable Gregory A. Peterson, John Doe Judge and Francis D. Schmitz, Special Prosecutor,**

          **Respondents.**

_____

**FILED**

**DEC 2, 2015**

Diane M. Fremgen
Clerk of Supreme Court

**State of Wisconsin ex rel. Francis D. Schmitz,**

     **Petitioner,**

  **v.**

**Honorable Gregory A. Peterson, John Doe Judge,**

     **Respondent,**

**Eight Unnamed Movants,**

     **Interested Party.**

---

MOTION for reconsideration of a decision of the Supreme Court.  *Motion for reconsideration and motion for stay denied; mandate clarified.*

¶1  PER CURIAM.  Attorney Francis Schmitz, who has been designated as the special prosecutor representing the State of Wisconsin throughout the proceedings in this court, has filed a motion for reconsideration of a portion of this court's July 16, 2015 decision.  Attorney Schmitz also asks this court to stay its mandate regarding the documents and data gathered during the investigation while the prosecution team determines whether to seek federal review of our decision.  In response, some of the Unnamed Movants (as that term was defined in the July 16, 2015 majority opinion) challenge whether Attorney Schmitz retains any authority to act as the special prosecutor.  The Unnamed Movants also argue that the motions should be denied because they fail to meet the relevant standards for relief.

2

¶2   We first address the question of Attorney Schmitz's authority and hold that, as of the date of this opinion, with the exception of the limited tasks explicitly imposed on him by this opinion, Attorney Schmitz's authority to act as the special prosecutor in what has become known as "John Doe II"[1] is terminated because his appointment was invalid.  We further deny both the motion for reconsideration and the motion for a stay. As described below, we clarify the portion of the mandate in the July 16, 2015 decision that required Attorney Schmitz to return and destroy documents and electronic data obtained during the John Doe II investigation.

¶3   Before we can address the substance of Attorney Schmitz's motions, we must address whether his motions should be dismissed because he lacks authority to continue acting as the John Doe special prosecutor.  One of the issues we asked the parties to address in State ex rel. Three Unnamed Petitioners v. Peterson, Case Nos. 2013AP2504-08-W, was whether Attorney Schmitz's appointment as the special prosecutor was valid.  Some of the Unnamed Movants argue that in light of a legal conclusion in Justice David T. Prosser's July 16, 2015 concurring opinion

---

[1] We use the term "John Doe II" to refer to the John Doe proceedings and the accompanying investigation in five counties that was initially presided over by Reserve Judge Barbara A. Kluka and since the fall of 2013 has been presided over by Reserve Judge Gregory A. Peterson.  We use the term "John Doe I" to refer to the earlier John Doe proceeding and investigation in Milwaukee County (Case No. 10JD7) that was presided over by Reserve Judge Neal Nettesheim.

3

that Attorney Schmitz's appointment was invalid, which was joined by three other justices, Attorney Schmitz lacks standing to pursue a motion for reconsideration or a motion for a stay of this court's decision.  On the other hand, Attorney Schmitz argues that the legal ruling of this court in Three Unnamed Petitioners, Case Nos. 2013AP2504-08-W, was an affirmance of the court of appeals' decision denying the Three Unnamed Petitioners' petition for a supervisory writ, which means that he continues to have standing to act as the special prosecutor in all respects, including by filing new motions and other papers in this court.  Resolving this issue requires that we clarify the legal effect of the opinions we issued on July 16, 2015.

¶4   When we were addressing the merits of Three Unnamed Petitioners, Case Nos. 2013AP2504-08-W, the court's task was to determine whether the court of appeals had properly denied the Three Unnamed Petitioners' petition for a supervisory writ. Accordingly, we looked to the standard of review and the standard for obtaining such a writ.  In the July 16, 2015 majority opinion, this court determined that the Three Unnamed Petitioners could not meet one of the requirements for the issuance of a supervisory writ——namely, that the John Doe judge at the time of Attorney Schmitz's appointment, Reserve Judge Barbara Kluka, had violated a plain duty under then-existing law in appointing Attorney Schmitz.  Accordingly, this court affirmed the court of appeals' decision denying the Three

4

Unnamed Petitioners' petition for a supervisory writ.  Given that standard of review, the determination of no violation of a plain legal duty was the extent of this court's legal ruling in Case Nos. 2013AP2504-08-W with respect to the question of whether the Three Unnamed Petitioners were entitled to the supervisory writ they had requested from the court of appeals.

¶5   Indeed, because the issue was presented at that point in time in the context of a supervisory writ petition and the court determined that the writ standard had not been satisfied, there was no need for the majority opinion to reach the issue of whether Attorney Schmitz could continue to act as the special prosecutor.   See State ex rel. Two Unnamed Petitioners v. Peterson, 2015 WI 85, ¶132 n.43, 363 Wis. 2d 1, 866 N.W.2d 165. ("We need not address what effect an unlawful appointment would have had because no violation of a plain legal duty occurred.").

¶6  On the other hand, Justice Prosser's concurring opinion proceeded to discuss the underlying legal issue——namely, whether Attorney Schmitz's appointment as the special prosecutor had been valid.[2]   Justice Prosser interpreted the special

---

[2] This was not the first time that, despite the court having denied a supervisory writ because the petitioner could not demonstrate a violation of a plain legal duty, the court has gone on to discuss the underlying legal issue.  See, e.g., State ex rel. Kalal v. Circuit Court for Dane Cnty., 2004 WI 58, ¶26, 271 Wis. 2d 633, 681 N.W.2d 110 ("Although the Kalals have failed to establish the existence of a plain duty and are not entitled to a supervisory writ, we will address the statutory interpretation question presented by this case.").

prosecutor statute, Wis. Stat. § 978.045, to contain two prerequisites that must be satisfied in order for an appointment of a special prosecutor to be valid:  (1) the court or district attorney seeking the appointment of a special prosecutor must first seek assistance from other prosecutors, including from an assistant attorney general, and (2) one of the nine conditions set forth in Wis. Stat. § 978.045(1r) must apply to the situation.  Justice Prosser concluded that the appointment of Attorney Schmitz as a special prosecutor for the John Doe II proceedings in the five counties at issue had been invalid because the appointment had not satisfied one of the nine conditions in subsection (1r) of the special prosecutor statute.

¶7   Three other justices joined this portion of Justice Prosser's concurring opinion.   Two Unnamed Petitioners, 363 Wis. 2d 1, ¶306 (Prosser, J., concurring, joined as to Section IV by Chief Justice Roggensack, Justice Ziegler, and Justice Gableman).   It should be noted, however, that there was no mandate at the end of Justice Prosser's opinion.[3]   Indeed, as

---

[3] There also was no part of the mandate at the end of the majority opinion that addressed the legal conclusion in Justice Prosser's concurring opinion that the appointment of Attorney Schmitz as the special prosecutor had been invalid.  The mandate at the end of the majority opinion merely stated "Petition for supervisory writ denied and decision affirmed in Three Unnamed Petitioners."   This tracked the holding set forth in the majority opinion that the petition for supervisory writ must be denied because the Three Unnamed Petitioners had not demonstrated that the John Doe judge had violated a plain legal duty.

6

in the majority opinion, there was no discussion in Justice Prosser's concurring opinion of the effect of the legal determination that Attorney Schmitz's appointment as special prosecutor was invalid.  In essence, given the procedural posture, while there were four justices who reached the same conclusion about a question of law, there was no legal ruling by the court at that point in time on the issue of Attorney Schmitz's past or present authority as the John Doe II special prosecutor.

¶8  The fact that the court confined its legal ruling to affirming the court of appeals' denial of the supervisory writ petition that was the subject of its review due to the applicable standard does not mean that Attorney Schmitz should be able to continue to act as the special prosecutor in all respects as if his appointment were valid.  That would ignore the reality shown in Justice Prosser's concurrence that a majority of the justices of this court conclude that his appointment was invalid.  That legal conclusion of four justices set forth in Justice Prosser's concurrence remains regardless of any subsequent actions or inactions by Attorney Schmitz or anyone else.  Attorney Schmitz, however, has chosen to continue to act as the special prosecutor by filing his current motions for reconsideration and a stay in this court.  Moreover, he has specifically made a continuing claim in his filings that, because of the denial of the supervisory writ filed by the Three Unnamed Petitioners, he retains complete authority to act as the

7

special prosecutor going forward, despite the writings issued by this court on July 16, 2015.  Because we are presented with his continued filings brought in his capacity as the appointed special prosecutor, we now must address the underlying legal question of Attorney Schmitz's authority to act as the special prosecutor under the appointment orders issued by the initial John Doe II judge.  If Attorney Schmitz lacks the authority to act as the special prosecutor because his appointment was invalid, then his motions could be dismissed simply on that ground without considering the arguments made in those motions.

¶9  For the reasons set forth in Justice Prosser's July 16, 2015 concurring opinion, we hold that Attorney Schmitz's appointment as the special prosecutor in the John Doe II proceedings pending in each of the five counties was invalid. Two Unnamed Petitioners, 363 Wis. 2d 1, ¶¶203-39 (Prosser, J., concurring).  With three justices having already declared

agreement with Justice Prosser's reasoning, there is no reason to repeat that reasoning here.[4]

¶10 The next question, which was not addressed in the July 16, 2015 opinions, is what is the effect of the determination that Attorney Schmitz's appointment was invalid. Because the appointment process and order did not comply with the special prosecutor statute, was the appointment order essentially a nullity from the beginning, rendering void all of Attorney Schmitz's acts as the special prosecutor, or did Attorney Schmitz lose his authority to act at a later time?

¶11 We conclude that the proper answer is that the authority of someone who is appointed as a special prosecutor ends at the point in time when a court makes a legal ruling that the appointment was invalid and orders as a matter of law that

---

[4] We note that over the last few months, the legislature has passed and the governor has signed two pieces of legislation that affect the conduct of John Doe proceedings in a number of ways, including the appointment of special prosecutors. See 2015 Wis. Act 55 (the 2015 "Executive Budget Act") and 2015 Wis. Act 64. As a result of those enactments, it is now clear that in order for an individual to be appointed as a special prosecutor in a John Doe proceeding, one of the conditions listed in the special prosecutor statute must exist. Wis. Stat. § 978.045(cm) ("The judge may not appoint an attorney as a special prosecutor to assist the district attorney in John Doe proceedings under s. 968.26 unless a condition under par. (bm)1. to 8. exists or unless the judge determines that a complaint received under s. 968.26(2)(am) relates to the conduct of the district attorney to whom the judge otherwise would refer the complaint. This paragraph does not prohibit assistance authorized by s. 978.05(8)."). This statutory revision is consistent with the reasoning of Justice Prosser's July 16, 2015 concurring opinion.

the individual's authority is terminated.  While four justices of this court reached a legal conclusion as part of the July 16, 2015 writings that Attorney Schmitz's appointment was invalid, there was not a legal ruling from the court at that juncture and no order that Attorney Schmitz cease acting as a special prosecutor in the John Doe II proceedings.  Given Attorney Schmitz's continuing reliance on Judge Kluka's appointment orders as the basis for continuing to act as the special prosecutor, we now issue a legal ruling and order that, because of the invalidity of his appointment, Attorney Schmitz must cease taking any actions as the John Doe II special prosecutor as of the date of this opinion and order, except for the actions this court directs below to conclude the John Doe II investigation.

¶12 We do not hold that because of the invalidity of Attorney Schmitz's appointment, all of his actions as the special prosecutor since his appointment, including his filing of briefs, motions, memoranda, etc. before the John Doe judge, the court of appeals, and this court, were nullities at the time they were taken.[5]  Such a ruling would unfairly void actions relied on by the special prosecutor, the lower courts, law enforcement, and the individuals/entities that have been

_____

[5] Rather than voiding an appointed individual's authority to act from the time of an invalid appointment, we hold that the individual's authority to act as a special prosecutor is prospectively voidable by a court.

10

involved with the John Doe investigations and proceedings.  A John Doe judge did sign orders that appointed Attorney Schmitz as the special prosecutor in each of the five John Doe II proceedings.  Both he and the John Doe judges relied on those orders.  As a result of that reliance, the John Doe judge issued search warrants and took other actions.  Nullifying those actions now because of his invalid appointment would unfairly upset that reliance without providing any countervailing benefit to the administration of justice.

¶13  Moreover, making all of a special prosecutor's actions void ab initio when an appointment order has failed to comply with the special prosecutor statute would carry the potential for grave mischief.  If that were the law, a defendant who was being criminally prosecuted by a special prosecutor could potentially wait until after a judgment of conviction had been entered and then obtain a ruling from the trial court (or even an appellate court) that the conviction was invalid because the special prosecutor's actions in filing the criminal complaint and trying the case were legal nullities.  Such a rule could undo convictions that were otherwise valid in all respects simply because the appointing judge failed to ensure that the appointment process and order complied with the special prosecutor statute.  Where there are no other bases for overturning what a special prosecutor has done, including obtaining a criminal conviction, and no personal rights of the defendant have been violated, justice would be thwarted by

11

allowing a defendant to undo otherwise valid prosecutorial actions.

¶14 The rule that we adopt, however, does not leave a defendant (or a subject of a John Doe investigation) without any remedy where a special prosecutor has been invalidly appointed. Where the defendant learns of the grounds for the invalidity of the appointment, the defendant has an incentive to bring that issue to the attention of a court as soon as possible in order to obtain a ruling on whether the appointment was invalid and whether the special prosecutor may continue to act in that capacity.  A ruling on that issue would then provide clarity to all as to whether and how the case may proceed.

¶15 Our ruling herein, that Attorney Schmitz's authority to act as the special prosecutor in John Doe II terminates with the release of this opinion (except to comply with the limited, specified obligations imposed in this opinion), means that the actions Attorney Schmitz has previously taken, including filing the current motion for reconsideration and motion for a stay, were within his authority at that time.  Consequently, we do not dismiss the current motions, as requested by some of the Unnamed Movants.

¶16 Having now terminated Attorney Schmitz's authority to act as the special prosecutor, we recognize that to this point he has been the sole named party in these three John Doe proceedings to appear on behalf of the prosecution.  We note that Attorney Schmitz has indicated in his recent filings that

12

the prosecution intends to seek review of our July 16, 2015 decision in the United States Supreme Court.  Our decision to terminate Attorney Schmitz's authority is not meant to interfere with the ability of the prosecution team to seek Supreme Court review.  We simply conclude that, where a court rules that an individual has not been validly appointed to act as a special prosecutor on behalf of the state, it would be illogical to allow the individual to continue to file pleadings and briefs on the state's behalf.[6]  To allow such ongoing conduct would render meaningless the legal conclusion of an invalid appointment. Nonetheless, in view of the fact that Attorney Schmitz has been the only member of the prosecution team named as a party in these matters, this ruling has the potential to create problems with respect to who may act on behalf of the prosecution in this court or elsewhere going forward.

¶17  We recognize that the five district attorneys have not been named parties in the proceedings in this court.  In fact, this court denied a motion to add them as parties as part of its December 16, 2014 order granting review of the three proceedings.  That motion, however, was not brought by the district attorneys; it was a motion filed by the Three Unnamed Petitioners at the time of the filing of their petition for

---

[6] While we hold that a special prosecutor may not continue to act on the merits in such a situation, we do not intend to foreclose the special prosecutor from seeking reconsideration or review of the decision terminating his/her authority, to the extent it is otherwise available.

13

review to forcibly add all five of the district attorneys as parties in Case Nos. 2013AP2504-08-W.  The district attorneys did not express a desire to become named parties at that point. Indeed, at that point in time there was no need to add the district attorneys as parties because the prosecution was represented by Attorney Schmitz as the special prosecutor.

¶18 The fact that the district attorneys were not named parties to the proceedings in this court, however, does not mean that none of them has been involved in the John Doe II investigation and the proceedings in this court.[7]  To the contrary, the district attorneys from the five counties and some or all of their assistants have been admitted to participate in

---

[7] The dissent criticizes the court for referring to the John Doe II "prosecution team" in this opinion, implying that there was no group of prosecutors, investigators, and others who prosecuted the John Doe II investigation, and that Attorney Schmitz worked alone in prosecuting the John Doe II.  Although the court will not disclose any of the specific individuals who clearly worked with Attorney Schmitz on the John Doe II investigation, as the dissent well knows, the John Doe record is replete with prosecution documents that were signed by individuals other than Attorney Schmitz.  Given the size and scope of the investigation and the voluminous filings in this court, it would have been impossible for Attorney Schmitz to pursue the investigation and the subsequent appellate proceedings singlehandedly after he became the nominal leader of the prosecution.  Finally and most importantly, in his reply in support of the current motions, Attorney Schmitz himself makes multiple references to the "prosecution team" and asserts that, while he consulted members of that team about various matters, he exercised the final decision-making authority during the time he acted as the special prosecutor.  To claim that there has not been and is not now a "prosecution team," when the dissent clearly knows otherwise, is disingenuous.

the John Doe II proceedings.  It should be remembered that it was the Milwaukee County District Attorney and his office that initiated the John Doe II proceeding, led the prosecution for the first year, and then sought the involvement of the four other district attorneys.

¶19  While the court did not see a need to force all five of the district attorneys into becoming named parties at the time it granted review, the situation has now changed as a result of the legal ruling in this opinion that Attorney Schmitz will no longer be able to represent the prosecution as the special prosecutor.  Accordingly, one or more of the district attorneys could seek to intervene in these actions, which would allow for the prosecution to be represented in future proceedings.  Given the inability of Attorney Schmitz to continue acting as the special prosecutor based on his invalid appointment, such a motion to intervene by one or more of the district attorneys would receive prompt review by this court.

¶20  We now turn to the substance of Attorney Schmitz's motion for reconsideration.  The court's Internal Operating Procedures (IOPs) set forth the standard we have applied to such motions:

> Reconsideration, in the sense of a rehearing of the case, is seldom granted.  A change of decision on reconsideration will ensue only when the court has overlooked controlling legal precedent or important policy considerations or has overlooked or misconstrued a controlling or significant fact appearing in the record.

Wis. S. Ct. IOP II.J.

15

¶21  We conclude that Attorney Schmitz's motion does not present any grounds to reconsider our prior decision.

¶22  The thrust of the motion for reconsideration is an argument that this court erred by not allowing Attorney Schmitz (or presumably the district attorneys) to continue the current John Doe II investigation to the extent of investigating whether there was coordination related to express advocacy.

¶23  We conclude that the argument that the previous search warrants and subpoenas were valid because they sought evidence of coordination of express advocacy has been forfeited.  When the Unnamed Movants filed motions with the John Doe judge for the return of seized property and to quash subpoenas, they argued that the state's theory of criminal liability on the basis of coordination of issue advocacy was unsupported by statutory and constitutional law.  Attorney Schmitz's response to those motions was a frontal counter-attack to the Unnamed Movants' arguments regarding the ability of the state to regulate the coordination of issue advocacy, both under the relevant provisions in Chapter 11 of the Wisconsin Statutes and under the federal and state constitutions.  His response never claimed that the subpoenas and search warrants that were the subjects of the Unnamed Movants' motions were valid because they were directed at finding evidence of coordination of express advocacy and never provided any examples of evidence of such express advocacy coordination.  Indeed, in his January 10, 2014 order granting the Unnamed Movants' motions, the John Doe judge

16

specifically concluded that "[t]he State is not claiming that any of the independent organizations expressly advocated" and "[t]here is no evidence of express advocacy."  The John Doe judge granted the motions for return of seized property and for quashing subpoenas on the ground that the state's theory that coordination of issue advocacy is regulated by Chapter 11 was legally incorrect.

¶24  It is true that, after the John Doe judge rejected the arguments Attorney Schmitz actually made to support the search warrants and subpoenas, he then attempted to bring express advocacy into the appellate writ case (State ex rel. Schmitz v. Peterson, Case Nos. 2014AP417-21-W) by including a second issue in his writ petition that asked whether "the record"[8] provided a reasonable belief that a campaign committee had violated Wisconsin's campaign finance laws by coordinating with independent disbursement committees that engaged in express advocacy.  Indeed, when the supervisory writ petition came to this court via petitions for bypass, this court's December 16, 2014 order included this second issue in its list of issues to be briefed.  Attorney Schmitz's attempt to introduce express advocacy coordination in the appellate court and this court's initial inclusion of his new issue, however, do not change the fact that he never raised this issue or made this argument

---

[8] This would have to be the record that was before the John Doe judge, namely, what the parties had presented to him in their filings.

before the John Doe judge.  By failing to raise the issue and argument in front of the John Doe judge, Attorney Schmitz forfeited his ability to argue that the subpoenas and search warrants at issue were valid because they were actually intended to obtain evidence of coordination of express advocacy.  See, e.g., Bostco LLC v. Milwaukee Metro. Sewerage Dist., 2013 WI 78, ¶83, 350 Wis. 2d 554, 835 N.W.2d 160 (where party attempted to make fundamentally different argument on appeal than it had made before the trial court, this court deemed the argument forfeited and declined to address it); Tatera v. FMC Corp., 2010 WI 90, ¶19 n.16, 328 Wis. 2d 320, 786 N.W.2d 810 ("Arguments raised for the first time on appeal are generally deemed forfeited.").  Accordingly, the argument was not addressed in the court's July 16, 2015 decision.

¶25  Indeed, even if the court had reached the merits of this issue, the nature of the matter before this court would have required the same result as set forth in the court's July 16, 2015 decision.  It must be remembered that it was the John Doe judge's January 10, 2014 order that this court was asked to review in both the original action (Two Unnamed Petitioners v. Peterson, Case No. 2014AP296-OA) and the writ proceeding (State ex rel. Schmitz v. Peterson, Case Nos. 2014AP417-21-W).  As noted above, the only means by which Attorney Schmitz attempted to bring coordination of express advocacy before any appellate court was his listing of express

18

advocacy coordination as an issue in his petition for a supervisory writ.

¶26 As was thoroughly explained in the July 16, 2015 majority opinion, in order to obtain a supervisory writ from an appellate court ordering the John Doe judge to reverse his January 10, 2014 order, Attorney Schmitz was required to prove that: "(1) an appeal is an inadequate remedy; (2) grave hardship or irreparable harm will result; (3) the duty of the trial court is plain and it must have acted or intends to act in violation of that duty; and (4) the request for relief is made promptly and speedily." Kalal, 271 Wis. 2d 633, ¶17.

¶27 Attorney Schmitz could not meet this standard for the issuance of a supervisory writ regarding investigation of express advocacy. Given that he was asking this court to direct the John Doe judge to reverse his January 10, 2014 order, how could Attorney Schmitz show that the John Doe judge had violated a plain legal duty by failing to rely on a theory that Attorney Schmitz never presented to that judge? It simply cannot be done. Thus, given the limited nature of the writ proceeding that Attorney Schmitz initiated for review of the John Doe judge's ruling and the standards that he was therefore obligated to meet, the writ petition would have been denied even if the

19

express advocacy coordination argument had been considered on the merits.[9]

¶28  We now turn to the issue of what should become of the multitude of documents and electronic files that Attorney Schmitz and the prosecution team amassed in the course of the John Doe II investigation, including via subpoenas and search warrants.  Having been advised in the motion for reconsideration that the prosecution team presently intends to seek review of the July 16, 2015 decision in the United States Supreme Court and in order to eliminate any confusion about what should happen to the evidence collected during the John Doe II investigation, we modify and clarify the portion of the July 16, 2015 mandate relating to the return of property seized in the investigation and the destruction of copies of documents and other materials obtained through the investigation.  The intent of this portion of our mandate was to require that the prosecution team divest itself of documents and data that were the product of an investigation based on an invalid theory under Wisconsin's campaign finance laws in order to ensure that the prosecution

---

[9] The court also notes the very careful way in which Attorney Schmitz has phrased his express advocacy argument.  He asserts that there is evidence (somewhere) of coordination between a campaign committee and other organizations, which happened to engage (at some point in time) in express advocacy. He does not affirmatively assert that any particular piece of express advocacy was the subject of specific coordination.

team would comply with the court's order to cease all activities related to the John Doe II investigation.

¶29 We still hold to these results, but we modify the means to accomplish them in order to avoid impeding in any way the ability of the prosecution team to seek certiorari review in the United State Supreme Court.  It is for that reason that, with certain exceptions, we do not impose an immediate deadline for Attorney Schmitz and his prosecution team to complete the obligations we impose below.  Unless otherwise noted, all of these obligations must be completed within 30 days following the completion of proceedings in the U.S. Supreme Court on any petition for certiorari review.  If no petition for certiorari review is filed, these actions must be completed within 30 days after the deadline for filing a petition for certiorari review.

¶30 We do impose these obligations on Attorney Schmitz. Although we have now held that he no longer possesses the authority to act as the special prosecutor in conducting the John Doe II investigation or filing documents on behalf of the state, he must still be allowed to perform the tasks that this court now assigns to him in order to rectify the results of the investigation, which we have determined was based on a faulty reading of the law.  If Attorney Schmitz could not be required to perform these tasks, there would be no party currently before the court to whom these tasks could be assigned.  Moreover, in his reply in support of his motion for reconsideration, Attorney Schmitz strongly contended that he was the person in charge of

21

the John Doe investigation and solely exercised final decision-making authority.  Given this assertion, it is appropriate that this court requires him to ensure that certain actions are performed (whether by him or by members of his prosecution team) and to make representations that those required actions have been completed.

¶31 We now turn to the specific tasks that must be performed.  First, we continue to require, to the extent it has not already been done, that Attorney Schmitz and his prosecution team return to the rightful owner any computer hardware and other items of tangible personal property that were seized by the prosecution team or law enforcement officers in the course of executing search warrants or obtained in response to subpoenas issued as part of the John Doe II investigation.  This must be completed within 30 days of the date of this decision.  The return of these items will not impede the preparation of a petition for certiorari review because Attorney Schmitz and his prosecution team will not be obligated to return any copy of data that resided on any such computer hardware, although they will be required at a later date to turn over all such copies to the clerk of this court, as described below.

¶32 Second, we require that Attorney Schmitz gather all documents and copies thereof (whether in hard copy or in digital form) and all electronic data and copies thereof obtained as a result of the John Doe II investigation from all persons who worked for or were associated with him and the prosecution team

22

in the John Doe proceedings/investigations.  The documents and electronic data that must be gathered also include all copies of documents and of electronic data that were obtained during the John Doe I investigation but were authorized by Judge Nettesheim in an August 10, 2012 order in Milwaukee County Case No. 10JD7 to be used in the subsequent John Doe II investigation.[10]  The universe of individuals from whom such documents and electronic data should be gathered must include all individuals, other than the John Doe judge and the employees of the five offices of the clerks of circuit court, who were granted access by the John Doe judge to the documents and/or electronic data obtained or used in the John Doe II investigation.  (This would include individuals who were granted access to the documents and electronic data that were the subject of Judge Nettesheim's August 10, 2012 order authorizing use of those documents in a subsequent John Doe II proceeding and investigation.)  The documents and electronic data should be collected and organized in a manner that allows the clerk of this court to retrieve

---

[10] We do not require that Attorney Schmitz gather and submit to the clerk of this court the work product generated by members of the prosecution team.  For example, he is not obligated to gather and submit memoranda, notes, and email messages generated by the prosecution team, even if those documents reference materials gathered or used during the John Doe II investigation. On the other hand, if there is a copy of a document or a computer file containing a copy of electronic data obtained or used during the course of the John Doe II investigation, the copy of the document or the computer file must be detached from the work product document and submitted to the clerk of this court as set forth in this opinion.

specific documents or sets of electronic data, in the event that such retrieval is subsequently ordered.

¶33 All of the documents and electronic data described above and all of the copies of such documents and electronic data shall be described on a written index.  The index shall describe, with reasonable specificity and consistent with the organization described in the preceding paragraph, the documents or electronic data that have been collected.

¶34 Third, we require that all of the documents and electronic data (and all copies thereof) be submitted under seal to the clerk of this court.[11]  Once this submission has occurred, no document or piece of electronic data (or any copies thereof) that was gathered in the course of the John Doe II investigation or that was gathered in the John Doe I investigation but

---

[11] In his reply in support of the motion for reconsideration, Attorney Schmitz stated that the electronic data obtained by the prosecution team in the course of the John Doe II investigation was stored on a portable hard drive that was in the possession of an investigator in the office of the Milwaukee County district attorney.  That portable hard drive and any other portable storage devices containing such electronic data must be included within the materials that are submitted to the clerk of this court.  If files containing electronic data obtained in the course of the John Doe II investigation are currently stored on the hard drives of computers used by members of the prosecution team or other individuals who were granted access to such data, Attorney Schmitz shall ensure that such prosecution team members copy such data to some form of portable memory (CD-ROM, portable hard drive, flash drive, etc.), which shall be submitted to the clerk of this court, and that the applicable data files are deleted from the computer hard drives.

authorized to be used in the John Doe II investigation should remain in the possession of Attorney Schmitz, any member of the prosecution team, or anyone who was authorized by the John Doe judge to have access to documents, materials, and electronic data gathered in the course of the John Doe II investigation. The prosecution team should be completely divested of all such documents, materials, and electronic data.  The clerk shall not file them as part of the appellate record in this case, but shall merely maintain them in a sealed and secure manner pending further order of the court.

¶35 Fourth, at the time that the documents and electronic data are submitted to the clerk of this court, Attorney Schmitz shall file with the clerk of this court and with the John Doe judge the index of the documents and electronic data described above.

¶36 Fifth, in addition to filing the index, Attorney Schmitz shall file an affidavit with both this court and the John Doe judge in which he avers that, to the best of his knowledge, he has collected and submitted to the clerk of this court all originals and all copies of documents and electronic data that were obtained in the course of the John Doe II investigation and that were obtained during the John Doe I investigation but were authorized to be used in the John Doe II investigation.  The affidavit shall also include an averment that Attorney Schmitz has received written statements from all members of the prosecution team and all individuals who were

25

granted access to John Doe II documents and electronic data that those persons have turned over to him all such documents and electronic data within their possession and that they no longer possess any such documents or electronic data (or copies thereof).

¶37  Finally, because we are not requiring Attorney Schmitz and the prosecution team to return and destroy all documents and electronic data immediately, we do require Attorney Schmitz, within 30 days of the date of this decision, to provide written notices to all individuals and organizations whose documents or electronic data were obtained by the prosecution team in the course of the John Doe II investigation or were obtained in the course of the John Doe I investigation and were authorized to be used in the John Doe II investigation.[12]    The notice should describe, with particularity, the nature and scope of the documents or electronic data that the prosecution team obtained, and from whom the documents and/or electronic data were obtained.    It should also notify the individual or organization that the documents and/or electronic data will be submitted to

---

[12] For example, if the prosecution team served a subpoena on Individual A's internet service provider that asked for all of Individual A's emails during a specified time period, Attorney Schmitz must notify Individual A that his/her emails from that time period were obtained from the specific internet service provider.    Attorney Schmitz is not obligated to notify all of the other individuals who are listed as recipients or senders of Individual A's emails or are mentioned within the text of Individual A's emails.

26

the clerk of this court pursuant to this court's order and that the clerk of this court will maintain the documents and/or electronic data under seal and in a secure manner until further order of the court.

¶38 Having modified and clarified the mandate in our July 16, 2015 decision, we turn to the motion for a stay filed by Attorney Schmitz. In order to obtain a stay pending appeal, Attorney Schmitz would be required to: (1) make a strong showing that he or the prosecution team is likely to succeed on the merits of any further appeal; (2) show that, unless a stay is granted, he and the prosecution team will suffer irreparable injury; (3) show that no substantial harm will come to other interested parties; and (4) show that a stay will do no harm to the public interest. State v. Gudenschwager, 191 Wis. 2d 431, 440, 529 N.W.2d 225 (1995). In light of our modification and clarification of the court's mandate with respect to the disposition of the documents and electronic data obtained in the John Doe II investigation or authorized to be used in the John Doe II investigation, we conclude that Attorney Schmitz cannot show that he or the prosecution team will suffer irreparable injury. The prosecution team will continue to possess all of its work product and all of the evidence gathered in the investigation, subject to the previous orders issued by the John Doe judge, during the time that it would be preparing any petition for U.S. Supreme Court review and until the conclusion of proceedings in that Court. Thus, the prosecution team can

27

suffer no injury during that time.  Even after that time, the documents and electronic data will not be destroyed, but will be stored by the clerk of this court in a sealed and secure manner pending further order of this court.  Thus, in the event that the investigation would be allowed to proceed at some future date, the documents and electronic data would still be available.  They could also potentially be available for use in related civil proceedings, if there is a request and a determination that such use is proper under the circumstances. Consequently, while we have modified and clarified the court's mandate in a manner that grants much of the relief sought by Attorney Schmitz, we deny his motion for a stay.

¶39  For the foregoing reasons,

IT IS ORDERED that the motion for reconsideration and the motion for stay are denied.

IT IS FURTHER ORDERED that the mandate of this court is modified and clarified as set forth above.

IT IS FURTHER ORDERED that Attorney Francis Schmitz shall immediately cease acting as the special prosecutor, except that he shall perform the specific tasks imposed on him by the court in this opinion.

*By the Court.*—The motion for reconsideration is denied, the motion for stay is denied, and the mandate is clarified, as described in the opinion.

¶40  ANN WALSH BRADLEY, J., and REBECCA G. BRADLEY, J., did not participate.

28

¶41  N. PATRICK CROOKS, J., passed away while these motions were pending and prior to their final resolution by the court.

¶42 SHIRLEY S. ABRAHAMSON, J. (*concurring in part and dissenting in part*). I agree with the per curiam that the July 16, 2015 majority opinion authored by Justice Gableman is significantly flawed and must be modified.[1] I do not, however, join the per curiam denying the Special Prosecutor's motion for reconsideration.[2]

¶43 In response to the motion for reconsideration, the per curiam significantly modifies the July 16, 2015 majority opinion by creative writing devoid of supporting legal authority. Furthermore, events subsequent to the motion for reconsideration have overtaken the per curiam.

¶44 Although professing to be even-handed in its treatment of the Special Prosecutor and the Unnamed Movants, the per curiam is anything but even-handed. The per curiam terminates the Special Prosecutor's authority to act as Special Prosecutor from this date forward and leaves the prosecution and State totally unrepresented in future proceedings in the John Doe trilogy. Yet the per curiam nonetheless assigns the Special

---

[1] Throughout my writing, I will refer to Justice Gableman's July 16, 2015 majority opinion as such, or as "the majority opinion." The full citation to the majority opinion is State ex rel. Two Unnamed Petitioners v. Peterson, 2015 WI 85, 363 Wis. 2d 1, 866 N.W.2d 165. I refer to today's per curiam opinion denying the Special Prosecutor's motion for reconsideration as "the per curiam."

[2] For an example of the court granting rather than denying a motion for reconsideration in order to clarify a previous decision, see State v. Johnson, 2014 WI 16, 353 Wis. 2d 119, 846 N.W.2d 1. See also Wis. S. Ct. IOP II. J. (governing reconsideration).

Prosecutor new tasks and new deadlines without providing the Special Prosecutor (a private practitioner) any compensation or assistance.

¶45 The per curiam appears to derail any meaningful review of the July 16, 2015 majority opinion, to stop any and all further investigation, and to prevent the release of information obtained during the investigation.

¶46 In sum, the per curiam embraces confusing and conflicting positions, all the while leaving many important issues unresolved, including those posed by events subsequent to the motion for reconsideration.

¶47 Specifically, the per curiam fails to address six events that have occurred since Justice Gableman's July 16, 2015 majority opinion and the Special Prosecutor's August 4, 2015 motion for reconsideration.  These intervening events significantly and immediately affect a response to the motion for reconsideration.  But the per curiam ignores the intervening events.

¶48 The six intervening events in chronological order are as follows:

1. The legislature enacted 2015 Wis. Act 55 (effective July 14, 2015) and 2015 Wis. Act 64 (effective October 25, 2015), revising the John Doe statutes.  The current, as-revised statutes are attached hereto as Attachment B.  The statutory revisions address, among other matters, the authority of reserve judges to preside over John Doe proceedings, secrecy orders, return of seized material,

and notice to persons with an interest in seized materials.

2. On October 28, 2015, Unnamed Movant No. 2 filed a document labelled a "notice of statutory changes." In essence, the "notice" is a motion seeking relief. The motion asserts that Act 64 affects, among other things, existing John Doe secrecy orders and the continued authority of reserve judges who were appointed John Doe Judges before Act 64 was enacted. The position of Unnamed Movant No. 2 appears to be that one of the statutory revisions terminates existing secrecy orders in John Doe I and John Doe II as to everyone except a judge, district attorney, other prosecutor, law enforcement officer, interpreter, or court reporter.[3] Unnamed Movant No. 2 also contends that various other statutory revisions affect the John Doe I and John Doe II investigations going forward. As a result, Unnamed Movant No. 2 argues this court should grant the Unnamed Movants relief according to the terms of the statutory revisions.

3. On October 29, 2015, counsel for the Reserve Judge appointed to preside over John Doe II proceedings advised the court that the Reserve Judges appointed to preside over the John Doe I and John Doe II proceedings will take

---

[3] See Wis. Stat. § 968.26(4)(a) (2015); 2015 Wis. Act 64, § 12j.

no further action unless and until this court determines that it is appropriate for them to proceed.

4. On November 11, 2015, the Special Prosecutor filed a response to Unnamed Movant No. 2's motion, arguing that the statutory revisions are inapplicable to the instant cases; and that if the revised statutes are applicable to the instant cases they interfere with existing court orders and are unconstitutional violations of the separation of powers doctrine.

5. On November 12, 2015, a district attorney and two assistant district attorneys filed a supplemental memorandum in support of their petition for limited intervention seeking to preserve documents from destruction. These petitioners for limited intervention argue that Unnamed Movant No. 2's filing (which they consider a motion) improperly seeks to expand the scope of Justice Gableman's July 16, 2015 majority opinion to require the destruction of not only materials obtained in the John Doe II investigation but also materials acquired in the John Doe I investigation and that limited intervention is required to afford the petitioners procedural and substantive due process.

6. On November 19, 2015, Unnamed Movant No. 2 filed a "reply regarding notice of statutory change." The filing of a reply further demonstrates that Unnamed Movant No. 2's "notice of statutory changes" is really a motion. Among other things, the reply clarifies Unnamed Movant No. 2's

4

position regarding the effect of the statutory revisions on the John Doe I and John Doe II investigations and responds to the Special Prosecutor's argument that the application of the revised statutes to the instant cases unconstitutionally violates the separation of powers doctrine.

¶49 In short, these intervening events raise the issue of whether recently-enacted statutory revisions effective July 14 and October 25, 2015, apply to the John Doe proceedings commenced prior to the effective date of the revised statutes.

¶50 These intervening events make clear that the per curiam is too little, too late. The per curiam fails to come to grips with the present circumstances in which the court and parties find themselves. The court leaves these and other important issues for another day, although they are of immediate significance and ripe for decision, having been fully briefed.

¶51 The per curiam is too little: It does not address the effect of the revised John Doe statutes on the majority opinion, the per curiam, and the pending John Doe proceedings commenced prior to the effective date of the revised statutes. It merely references the recently revised John Doe statutes once, in footnote 4,[4] and ignores the other filings relating to the revised statute.

---

[4] Per curiam, ¶9 n.4. The per curiam's reference to 2015 Act 64 is ambiguous. Does it mean that the per curiam views Act 64 as applying (or not applying) to John Doe II?

(continued)

¶52 The per curiam is too late: As a result of these six intervening events, the per curiam is responding to pre-October 28, 2015 circumstances, not present circumstances. Therefore, the per curiam is an interim, temporary document that will have to be modified and clarified. The court is dealing with the John Doe trilogy in a piecemeal fashion. Thus, each opinion or order will be short-lived, requiring expeditious revision. The per curiam's piecemeal approach creates more work for the litigants, the lawyers, and this court.

¶53 I would grant the motion for reconsideration, order oral argument on the issues raised in the motion for reconsideration and the effect of the revised John Doe statutes, and then issue a decision. Oral argument would allow the court and the public to consider the numerous issues raised by the parties and the six intervening events in the crucible of an open, adversary proceeding.

¶54 I turn now to the substance of the too-little-too-late per curiam.

¶55 The per curiam is confronted with five **sealed** motions (and responses thereto):

1. A motion for reconsideration filed by the Special Prosecutor.

---

In addition to 2015 Wis. Act 64, which Unnamed Movant 2 discusses in its motion, the per curiam also cites 2015 Wis. Act 55 (effective July 13, 2015), which modifies the Special Prosecutor statute. See Wis. Stat. § 978.045(1r)(bm) (2015).

6

2. Three motions for limited intervention. One was filed by two investigators; a second was filed by a law enforcement officer. A third was filed by a district attorney and two assistant district attorneys, but is not addressed by the court. This third motion is substantially similar to the other two motions for limited intervention and received the same response from the Unnamed Movants.

3. A motion filed by Unnamed Movants Nos. 4 and 5 for immediate remand to John Doe Judge Gregory Peterson.

¶56 Today four justices deny four of the five sealed motions in the per curiam and two separate orders.

¶57 The motion for reconsideration is denied in the per curiam, but Justice Gableman's July 16, 2015 majority opinion is significantly modified.

¶58 Two of the three motions for limited intervention are denied in a separate order. No explanation is offered for the denial.

¶59 The per curiam ignores the third motion for limited intervention by a district attorney and assistant district attorneys. It is still pending before the court. No explanation is offered for not responding to the motion. (Is the court holding this motion to try to induce the district attorney and two assistant district attorneys to seek full intervention so the prosecution and State are represented hereafter?)

¶60 The motion to remand matters to John Doe Reserve Judge Peterson is denied in a second order. No explanation is offered for the denial.

¶61 My separate writings about the per curiam and two orders, one denying limited intervention and the other denying the remand to the John Doe Judge, should be read together.[5]

¶62 In this writing, I address the per curiam denying the Special Prosecutor's motion for reconsideration.

¶63 Lest the reader get lost in the per curiam's thicket, let me begin by summarizing the per curiam's salient modifications of the majority opinion.

¶64 First, the per curiam does not modify the majority opinion's misguided conclusion that the State cannot constitutionally regulate coordinated issue advocacy at all.[6] The Special Prosecutor has called the court's attention to a recent decision of the United States Court of Appeals for the Third Circuit that is contrary to the July 16, 2015 majority opinion. The Third Circuit recognized on July 16, 2015, that the United States Supreme Court has consistently held that

---

[5] The order denying limited intervention and my separate writing is attached hereto as Attachment D. The order denying the motion to remand matters to John Doe Judge Peterson and my separate writing is attached hereto as Attachment E.

[6] "No opinion issued by the Supreme Court, or by any court of appeals, establishes ('clearly' or otherwise) that the First Amendment forbids regulation of coordination between campaign committees and issue-advocacy groups—let alone that the First Amendment forbids even an inquiry into that topic." O'Keefe v. Chisholm, 769 F.3d 936, 942 (7th Cir. 2014), cert. denied, 135 S. Ct. 2311 (2015).

disclosure requirements are not constitutionally limited to express advocacy; "there is not a 'rigid barrier between express advocacy and so-called issue advocacy.'"[7]

¶65 Second, the per curiam does modify the majority opinion's mandate regarding the validity of the appointment and continuing authority of the Special Prosecutor.[8]

¶66 The per curiam modifies the majority opinion's mandate by "order[ing] as a matter of law that the [Special Prosecutor's] authority is terminated" from this date forward.[9] Thus the prosecution and State are left totally unrepresented hereafter. If the Special Prosecutor is not permitted to represent the prosecution's and State's interests, then who may?

---

[7] Del. Strong Families v. Att'y Gen., 793 F.3d 304, 308 (3d Cir. 2015) (quoting McConnell v. FEC, 540 U.S. 93, 193 (2003)) (emphasis added); see also Lyle Denniston, Constitution Check: What's the Next Big Controversy on Campaign Finance, Constitution Daily (July 21, 2015), http://blog.constitutioncenter.org/2015/07/constitution-check-whats-the-next-big-controversy-on-campaign-finance/ (last visited Nov. 5, 2015) (describing the Third Circuit's decision and the Wisconsin John Doe trilogy as conflicting).

[8] The majority opinion affirmed the court of appeals' decision, leaving the Special Prosecutor's appointment and authority intact. Majority op., ¶132 ("Because the Unnamed Movants have not established that Reserve Judge Kluka violated a plain legal duty in appointing the special prosecutor, we deny their petition for a supervisory writ and affirm the court of appeals."); see also majority op., ¶137.

[9] Per curiam, ¶11. The Special Prosecutor's authority to act as special prosecutor "is prospectively voidable . . . ." Per curiam, ¶12 n.5.

The per curiam intimates that the Special Prosecutor may seek reconsideration or review of this aspect of the per curiam decision terminating his authority. Per curiam, ¶16 n.6.

¶67 The per curiam has painted itself into a corner without a way out by eliminating representation for the prosecution and State in John Doe II proceedings from today on. And there are many matters to be decided in the John Doe II proceedings still before the court.

¶68 In February 2014, Three Unnamed Petitioners alerted the court that if the Unnamed Petitioners prevailed on their argument that the Special Prosecutor's appointment was invalid, the five district attorneys would need to be parties in order to continue proceedings in the Special Prosecutor's absence.[10] A copy of the Three Unnamed Petitioners' motion to add the five district attorneys as parties is attached hereto as Attachment C.

¶69 The four justices joining the per curiam ignored the Three Unnamed Petitioners' admonitions and denied the motion without explanation on December 16, 2014.[11]

¶70 Now, more than a year and a half after the motion was made, almost one year after the motion was denied, and more than four months after the July 16, 2015 majority opinion ordered the investigation closed, the per curiam is desperately trying to find someone other than the Special Prosecutor who can represent the State's interests so the court can conduct adversarial

---

[10] See Attachment C, attached, at 4.

[11] See December 16, 2014 order granting review, at 7; see also December 16, 2014 order granting review, at ¶4 (Abrahamson, C.J., concurring) ("[T]he five district attorneys . . . , in my opinion, should be made parties as requested.").

proceedings on the many remaining issues. The per curiam has thus far failed in this endeavor.

¶71 Third, the per curiam modifies the majority opinion's mandate, by eliminating the "search and destroy" mission that the majority opinion ordered.[12]

¶72 The majority opinion directed the "special prosecutor and the district attorneys involved in this investigation [to] cease all activities related to the investigation, return all property seized in the investigation from any individual or organization, and permanently destroy all copies of information and other materials obtained through the investigation."[13]

¶73 The "search and destroy" mandate in the majority opinion is so broad and difficult to understand and implement that parties on both sides of the "v." have proposed a variety of ways of clarifying and modifying the mandate or remanding the implementation of the majority opinion to the John Doe Judge.

¶74 The per curiam modifies the majority opinion by ordering the Special Prosecutor to undertake a "clear and hold" mission.[14] Thus, the per curiam modifies the Special

---

[12] Per curiam, ¶¶28-29.

[13] Majority op., ¶135.

[14] During the Vietnam War, United States forces employed two counterinsurgency strategies. The first involved "search and destroy" missions, whereby forces would be inserted into hostile territory to search out the enemy, attack them and their supplies, and quickly withdraw. The second strategy involved efforts to "clear and hold." They focused on maintaining control of important agricultural areas and population centers. See Gordon L. Rottman, Vietnam Infantry Tactics 61-62 (2011).

Prosecutor's rules of engagement.  The Special Prosecutor and the "prosecution team" must divest themselves of the documents and electronic files from the John Doe investigations and submit them under seal to the Clerk of the Supreme Court.[15]

¶75 The per curiam constructs the new "clear and hold" mandate out of whole cloth, without sufficient information about what and where the materials are to be "cleared and held."  The per curiam is entering an order in a factual vacuum.  The four justices joining the per curiam do not know the full extent and nature of the items and material gathered in the course of the investigation.  Moreover, the four justices joining the per curiam do not know whether this mandate can be implemented within the times they allotted.[16]  Simply put, the four justices are issuing the per curiam mandate in the dark.

¶76 Consequently, implementing the per curiam's mandate will pose difficulties.  Moreover, after the per curiam is

---

[15] Per curiam, ¶¶28-37.

[16] The per curiam sets forth specific times by which the Special Prosecutor must implement various aspects of the new "clear and hold" mandate.

Computer hardware and other items of "tangible personal property" are to be returned to their owners within 30 days of the per curiam's release. Per curiam, ¶31.  Written notice must also be provided within 30 days of the per curiam "to all individuals and organizations whose documents or electronic data were obtained by the prosecution . . . ." Per curiam, ¶37.  The remainder of the per curiam's "clear and hold" mandate must be implemented within 30 days of the completion of proceedings in the United States Supreme Court or 30 days after the deadline to file a petition for writ of certiorari, if no petition is filed. Per curiam, ¶29.

released many issues remain unresolved and will dominate this court's work for a long time to come.

¶77 Fourth, by modifying the majority opinion's mandate, the per curiam effectively grants the Special Prosecutor's motion for a stay of the majority opinion's "search and destroy" mandate, at least pending review by the United States Supreme Court.[17] In modifying the majority opinion, the per curiam provides that documents and electronic data will not be destroyed until further order of the court.[18] But the four justices joining the per curiam say nothing about when such an order might be issued and what it might say.

¶78 I concur in the concept of a stay. The stay the per curiam grants does not, however, appear to preserve John Doe materials to use in future criminal prosecutions. Nor does the per curiam assure that the materials will be preserved and available for use by the Special Prosecutor and others in their defense of presently pending civil litigation relating to the John Doe trilogy.[19]

---

[17] Per curiam, ¶29.

[18] Per curiam, ¶37.

[19] The John Doe investigations have spawned a number of lawsuits alleging, among other things, civil rights violations by the prosecutors and law enforcement officers, and unlawful activities by the Government Accountability Board. See, e.g., O'Keefe v. Chisholm, 769 F.3d 936 (7th Cir. 2014), cert. denied, 135 S. Ct. 2311 (2015); Archer v. Chisholm, No. 15-cv-922-LA (E.D. Wis.); O'Keefe v. Wis. Gov't Accountability Bd., No. 2014CV1139 (Waukesha Cnty. Cir. Ct.).

¶79 The per curiam states that materials "could also potentially be available for use in related civil proceedings, if there is a request and a determination that such use is proper under the circumstances."[20] This cryptic aside does not assure that the materials will actually be available for use in related litigation, let alone that the materials will be preserved until the relevant statutes of limitations on civil litigation have run. Nor does the per curiam explain how the Special Prosecutor or others may access the materials except through a "request," or what uses are "proper under the circumstances."[21] According to various reports, similar future litigation has been threatened.[22]

¶80 Fifth, the per curiam modifies the functions of the Special Prosecutor from this date forward. The per curiam terminates the authority of the Special Prosecutor to act as special prosecutor and assigns him new tasks without giving the

---

[20] Per curiam, ¶38.

[21] The per curiam does not explain whether making materials available for use in related litigation is consistent with the revised John Doe statutes. See Wis. Stat. § 968.26(4)(a)-(b) (2015). Unnamed Movant No. 2's motion argues that Wis. Stat. § 968.26(4)(b) bars at least John Doe Judges Peterson and Nettesheim from authorizing the disclosure of materials going forward. Nonetheless, Unnamed Movant No. 2's motion also suggests that this court may allow the use and production of certain materials, like investigators' notes or memoranda, in civil litigation.

[22] See, e.g., Collin Levy, The Wisconsin Targets Tell Their Story, Wall St. J., July 22, 2015; M.D. Kittle, John Doe Horror Stories: 'I felt completely helpless in my own home,' WisconsinWatchdog.org, July 23, 2015, available at http://watchdog.org/230683/john-doe-deborah-jordahl-raids/.

Special Prosecutor (who is a private practitioner), any resources or payment for his services.[23]

¶81 The John Doe investigation is based in large part on the idea of "follow the money."[24] Here, it is unclear where the money to support the per curiam's orders will come from. The four justices have imposed an "unfunded mandate" on someone. But on whom? The Special Prosecutor personally? The State? A county? Which one?

¶82 Sixth, as stated previously, the per curiam is silent regarding what modifications, if any, will be needed to the July 16, 2015 majority opinion and to the per curiam in light of the recent statutory revisions to the John Doe statutes and the related filings.[25] For example, one non-statutory provision of 2015 Wis. Act 64, Section 12j, states that John Doe secrecy orders "in effect on the effective date of this subsection may apply only to" John Doe judges, district attorneys, other prosecuting attorneys, law enforcement personnel, interpreters and court reporters.[26] Under Section 12j, secrecy orders

---

[23] Per curiam, ¶¶28-36.

[24] See All the President's Men (Warner Bros. 1976).

[25] See 2015 Wis. Act 64; 2015 Wis. Act 55.

This part of the revisions of the John Doe statutes raises the question of whether Section 12j terminates the secrecy orders entered in John Doe I and John Doe II, and if so, whether Section 12j violates the separation of powers doctrine.

[26] 2015 Wis. Act 64, Section 12j states in full:

"A secrecy order entered under section 968.26 of the statutes that is in effect on the effective date of
(continued)

15

covering other individuals are "terminated on the effective date of this subsection."[27] The effective date of 2015 Wis. Act 64 is October 25, 2015. The court leaves these and other important issues for another day although they are fully briefed and of immediate significance.

¶83 I turn now to examining the flaws in the per curiam in the following order:

1. **The motion for reconsideration is veiled in secrecy. The per curiam may be open to challenge on First Amendment and state grounds. The per curiam also does not address leaks of sealed information. See ¶¶84-91, infra.**

2. **The per curiam overreaches to terminate the Special Prosecutor's authority to act as special prosecutor from this date forward. See ¶¶92-109, infra.**

3. **In terminating the authority of the Special Prosecutor, the per curiam unfairly leaves the prosecution and the State unrepresented from this date forward and deprives the Special Prosecutor, prosecutors, and law enforcement of the opportunity to preserve materials from destruction. See ¶¶110-125, infra.**

---

this subsection may apply only to persons listed in section 968.26(4)(a) of the statutes, as created by this act. A secrecy order covering persons not listed in section 968.26(4)(a) of the statutes, as created by this act, is terminated on the effective date of this subsection."

See also Wis. Stat. § 968.26(4)(a).

[27] 2015 Wis. Act 64, § 12j.

16

4. The question remains whether the per curiam is impeding review by the United States Supreme Court by terminating the authority of the Special Prosecutor.  See ¶¶126-130, infra.

5. Based on its erroneous conclusion that the Special Prosecutor never presented evidence of illegally coordinated express advocacy to the John Doe Judge, the per curiam erroneously concludes that the investigation into coordinated express advocacy cannot continue.  See ¶¶131-144, infra.

6. The per curiam constructs the "clear and hold" mandate in a factual vacuum and the mandate will require further clarification.  Indeed the Unnamed Movants do not agree in their recommendations to the court about the disposition of the materials.  See ¶¶145-149, infra.

7. The per curiam is unclear about whom it binds.  See ¶150, infra.

8. The per curiam ignores the Special Prosecutor's argument that evidence obtained through the subpoenas and search warrants should be retained under the good faith exception in Fourth Amendment suppression jurisprudence.  See ¶¶151-152, infra.

9. The per curiam leaves many foreseeable questions unanswered.  See ¶¶153-155, infra.

* * * *

1.  The motion for  reconsideration is veiled in secrecy.  The per curiam may be open to challenge on First Amendment and state

17

**grounds.  The per curiam also does not address leaks of sealed**

**information.**

¶84 Thirty-three filings, including the motion for reconsideration (and responses) and nearly every other filing in this court since July 16, 2015, are sealed.  For a listing of the 33 sealed filings since July 16, 2015, see Attachment A, attached.[28]  Thus, the parties' factual and legal arguments are closed to the public.[29]

¶85 Why the secrecy?  And by whose order?  All the filings were automatically sealed, without any review by this court and without any instruction or order from this court.

¶86 To illustrate the excessive sealing of material since July 16, 2015, I note two particularly egregious examples.[30]

¶87 First, both the complaint and amended complaint in the federal case entitled Archer v. Chisholm, No. 15-cv-922-LA (E.D.

---

[28] The only documents not under seal are Justice Prosser's separate writing explaining his rationale for denying a motion for his recusal, and documents that I filed.

In addition to the new filings placed under seal, some redactions relating to documents filed before July 16, 2015, still remain unresolved, even after the court released many other redacted documents in the lead-up to the July 16, 2015 opinions.

[29] At least redacted versions of the parties' briefs and other documents were publicly available relating to the July 16, 2015 majority opinion.

[30] Another example is the Special Prosecutor's motion for reconsideration.  The motion makes predominantly legal arguments and does not disclose the identity of the Unnamed Movants, the specific contents of any document or information obtained in the John Doe investigation, or any information that appears objectionable to either the prosecution or the Unnamed Movants.

Wis.) are appended to proposed intervenors' sealed motions. The Archer complaints are not under seal in the federal court. How can this court justify the sealing of complaints that are open in federal court? It cannot.

¶88 Second, the Special Prosecutor filed a letter stating that he intends to respond to Unnamed Movant 2's "notice of statutory changes." Although the letter explicitly stated that it was not being filed under seal; that it does not contain any confidential information; and that no redactions are needed, the letter was automatically sealed without any review by the court and without any instruction or order from the court.

¶89 The general rule is that court filings are presumptively open for public inspection. Placing filings under seal is the exception to the rule.[31] In the face of virtually total secrecy of filings since July 16, 2015, the public cannot understand the basis for the four justices' decisions. "The crucial prophylactic aspects of the administration of justice cannot function in the dark; no community catharsis can occur if justice is 'done in a corner [or] in any covert manner.'"[32]

---

[31] See, e.g., Press-Enters. Co. v. Superior Court, 464 U.S. 501, 508-10 (1984); Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 580 & n.17 (1980); In re Providence Journal Co., 293 F.3d 1, 13 (1st Cir. 2002); Grove Fresh Distrib., Inc. v. Everfresh Juice Co., 24 F.3d 893, 897 (7th Cir. 1994); Brown & Williamson Tobacco Corp. v. Fed. Trade Comm'n, 710 F.2d 1165, 1177-81 (6th Cir. 1983).

[32] Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 571 (1980) (quotation omitted) (alteration in original).

19

¶90 The automatic sealing of virtually all filings since July 16, 2015 without explanation raises significant First Amendment, state constitutional, statutory, and common law issues, and may be challenged as erroneous.[33] Any need to maintain the secrecy of portions of any filings should have been addressed promptly by the participating justices and material redacted for the public if necessary.

¶91 My primary concern to this point has been that this court continues to seal too much from public view. The court has failed to release documents that need not be sealed or that are already publicly available.[34] At the same time, the court's failure to enforce its sealing orders has, unfortunately, allowed a growing tide of leaks, flouting the court's orders without fear of consequences.[35] This situation does not engender

---

[33] See Brown & Williamson Tobacco Corp. v. Fed. Trade Comm'n, 710 F.2d 1165, 1176 (6th Cir. 1983) ("[W]e conclude that the District Court erred by failing to state findings or conclusions which justify nondisclosure to the public. The order of the District Court sealing the documents in the case is, therefore, vacated.").

[34] Unnamed Movant No. 2's filing points out that much of the material filed under seal has been released by court orders and suggests that a substantial amount of the materials under seal in this court may be unsealed consistent with concerns about revealing the names of the Unnamed Movants or others who were investigated. See also my concurrence/dissent to the majority op., ¶¶501-506.

[35] See, e.g., Jason Stein & Mary Spicuzza, More Documents Leaked in John Doe Case, Milwaukee J. Sentinel (Sept. 17, 2015); Molly Beck, Emails raise questions of impartiality, suggest Scott Walker was target of John Doe, Wis. State J. (Aug. 29, 2015); Editorial, We 'the Sheeple', Wall St. J. (Aug. 27, 2015).

confidence in the transparency or sealing of the proceedings, in the rule of law, or in this court's ability or willingness to enforce its orders.

### 2.  The per curiam overreaches to terminate the Special Prosecutor's authority to act as special prosecutor from this date forward.

¶92  The per curiam immediately goes astray when it states that "[b]ecause we are presented with [the Special Prosecutor's] continued filings . . . we now must address the underlying legal question of [the Special Prosecutor's] authority to act as the special prosecutor . . . ."[36]  "Now?"  "Must?"  Really?  The issue of the Special Prosecutor's authority <u>was</u> addressed by the court of appeals and this court in the supervisory writ action by three Unnamed Movants.

¶93 Addressing the issue of the Special Prosecutor's appointment and authority, the July 16, 2015 majority opinion affirmed the court of appeals, holding that John Doe Judge Kluka's appointment of the Special Prosecutor did not violate a plain legal duty.[37]  Thus, the Special Prosecutor's authority remained intact.

¶94  A majority of the justices joined the part of Justice Prosser's concurrence concluding that "Judge Kluka's appointment of the Special Prosecutor was invalid."[38]

---

[36] Per curiam, ¶8.

[37] Majority op., ¶¶132, 137.

[38] Justice Prosser's concurrence to majority op., ¶239.

¶95 The per curiam is correct that Justice Gableman's majority opinion controls.[39]

¶96 By joining both Justice Gableman's majority opinion and Justice Prosser's concurrence, four justices created at least two sets of votes that logically do not align: The four justices held that the Special Prosecutor's appointment was simultaneously valid and invalid. Compare majority op., ¶¶132 n.43, 137, Justice Ziegler's concurrence to majority op., ¶¶309, 340, and Justice Prosser's concurrence to majority op., ¶¶149, 239, 306.

¶97 The four justices attempt to mask this logical inconsistency. The per curiam creates an artificial distinction between the "legal ruling" in Justice Gableman's July 16, 2015 majority opinion that John Doe Judge Kluka's appointment of the Special Prosecutor did not violate a plain legal duty and the "reality shown" by the "legal conclusion" in Justice Prosser's concurrence that the Special Prosecutor's appointment was invalid.[40] These labels, "legal ruling," "legal conclusion," and "reality shown," are devoid of any meaning and should not obscure the fact that in the opinions issued on July 16, 2015, four justices voted that the Special Prosecutor's appointment was simultaneously valid and invalid, or that the per curiam reverses the July 16, 2015 majority opinion's conclusion regarding the validity of the Special Prosecutor's appointment and authority.

---

[39] Per curiam, ¶7 & n.3.

[40] See per curiam, ¶¶7-9.

22

¶98  These conflicting votes of the four justices resulted, I believe, from a change in this court's internal operating procedures for processing and mandating opinions.  Since the change was adopted in September 2014, the court no longer discusses draft opinions in conference unless a majority of justices votes to do so.[41]  From September 2014 to June 2015, no in person court conference was held on any draft opinion, including the drafts in the John Doe trilogy.

¶99  Thoughtful discussion and careful collegial review of the draft opinions in the John Doe trilogy would have revealed the internally contradictory nature of the several opinions joined in different parts by four justices.

¶100 Although the July 16, 2015 majority opinion applied the correct, limited standard of review for a writ proceeding,[42] the per curiam does an about-face.  The per curiam overreaches and "makes a legal ruling"[43] that the Special Prosecutor lacks authority to act as special prosecutor from the date of the per curiam forward.[44]

---

[41] The procedure adopted in September 2014 for processing opinions is set forth in full in State v. Gonzalez, 2014 WI 124, ¶30-31, 359 Wis. 2d 1, 856 N.W.2d 580 (Abrahamson, C.J., concurring).

[42] Majority op., ¶¶127-28 & n.41.

[43] Per curiam, ¶12.

[44] Per curiam, ¶¶2, 11.  In contrast, the per curiam relies on the limited standard of review in writ proceedings to hold that the Special Prosecutor could not prevail on his argument that the John Doe investigation should proceed as to coordinated express advocacy.  Per curiam, ¶27.

¶101 This conclusion is misguided for several reasons.

¶102 First, the per curiam reargues an issue already argued and considered.  A motion for reconsideration "is not intended to be an opportunity to reargue issues already argued and considered.  Rather, the primary purpose [of reconsideration] is to alert the court to errors or omissions in its decision."[45] The per curiam does not assert that any error or omission appears in the majority opinion's conclusion that the Special Prosecutor's appointment remains intact.

¶103 Second, under the per curiam's logic, the Special Prosecutor's authority to proceed would still be intact if he had not brought a motion for reconsideration.[46]  Does this make sense?  Not to me.

¶104 Third, only Unnamed Movants 2, 6, and 7 challenged the appointment and authority of the Special Prosecutor.[47]  The other Unnamed Movants did not raise this issue.  Why does the per curiam not hold that the other Unnamed Movants forfeited the argument that the Special Prosecutor lacked authority?  The per curiam does not even consider this question.  In contrast, the per curiam is quick to hold that the Special Prosecutor

---

[45] See Michael S. Heffernan, Appellate Practice and Procedure in Wisconsin § 22.4 (2014).

[46] See per curiam, ¶16.

[47] See my concurrence/dissent to the majority op., ¶¶542, 554.

forfeited his argument that the John Doe II investigation should continue into investigating coordinated express advocacy.[48]

¶105 Fourth, the per curiam applies two different rules to the two petitions for supervisory writs. In the petition brought by three Unnamed Movants for a supervisory writ invalidating the appointment and authority of the Special Prosecutor, the per curiam "'transform[s] the writ into an all-purpose alternative to the appellate review process . . . .'"[49] by concluding that the Special Prosecutor's appointment is invalid without regard to the limited nature of this court's review of a decision on a supervisory writ.

¶106 In contrast, relying on the limited nature of the writ proceeding,[50] the per curiam bars relief to the Special

---

[48] Per curiam, ¶¶23-24.

[49] Majority op., ¶137 (quoting State ex rel. Kalal v. Circuit Court, 2004 WI 58, ¶24, 271 Wis. 2d 633, 681 N.W.2d 110).

The per curiam relies on Kalal to justify its decision on the underlying legal issue, namely that the appointment of the Special Prosecutor was invalid. Kalal is inapposite. The Kalal court held that the Kalals failed to establish the existence of a plain legal duty and were not entitled to a supervisory writ. 271 Wis. 2d at ¶26. The Kalal court went on to discuss the statutory interpretation question presented but did not change its result, that is, the court's conclusion remained that the Kalals were not entitled to a supervisory writ because no plain legal duty existed. 271 Wis. 2d at ¶57.

In the instant case, the July 16, 2015 majority opinion declared that the parties were not entitled to a supervisory writ because no plain legal duty existed. Majority op., ¶137. The per curiam decides the underlying legal issue and now reverses the majority opinion's denial of the supervisory writ.

[50] Per curiam, ¶27.

Prosecutor on his petition for a supervisory writ to reverse the John Doe Judge's decision to quash the subpoenas and search warrants.

¶107 These two approaches seem inconsistent and result-oriented.

¶108 In addition to faulty "analysis," the per curiam fails to provide any assistance, resources, or compensation to the Special Prosecutor when he is implementing the new "clear and hold" mandate and fulfilling his new functions. The four justices impose an unfunded mandate on someone, but we do not know who that someone is. The record is unclear whether the Special Prosecutor has been compensated for all his work and whether he is now being compensated.

¶109 In sum, the per curiam's rationale simply seems invented to justify the pre-ordained desired result.

**3. In terminating the authority of the Special Prosecutor, the per curiam unfairly leaves the prosecution and the State unrepresented from this date forward and deprives the Special Prosecutor, prosecutors, and law enforcement officers of the opportunity to preserve materials from destruction.**

¶110 The per curiam recognizes that its ruling that the Special Prosecutor cannot continue to act in his official capacity "has the potential to create problems with respect to who may act on behalf of the prosecution in this court or elsewhere going forward."[51] The four justices should have seen

---

[51] Per curiam, ¶16.

26

this problem coming, but they did not. Now, the per curiam does next to nothing to resolve it.

¶111 The per curiam suggests that one or more of the five district attorneys whose petitions to commence John Doe proceedings started this investigation might seek to intervene to represent the prosecution and State in future proceedings.[52] The per curiam assures the reader that such a motion to intervene would receive prompt attention, but does not assure that such a motion would be granted.[53]

¶112 The four justices have already explicitly denied a motion to add the five district attorneys as parties, even though the Three Unnamed Petitioners warned more than a year and a half ago that if the five district attorneys were not joined and the court concluded that the Special Prosecutor could not continue to act in his official capacity, the prosecution would be left entirely unrepresented.[54] As the Three Unnamed Petitioners wrote (see Attachment C), the five district attorneys had an interest in the outcome of the John Doe trilogy and would incur significant expenses depending on the outcome:

> [I]f the petitioners are correct on the merits, the
> appointment of the special prosecutor was improper at
> the outset and is unsustainable now. Each of the five

---

[52] Per curiam, ¶19.

[53] Per curiam, ¶19.

[54] See December 16, 2014 order granting review, at 7 (denying a motion to make the district attorneys parties); see also December 16, 2014 order granting review, at ¶4 (Abrahamson, C.J., concurring) ("[T]he five district attorneys . . . in my opinion, should be made parties as requested.").

district attorneys would have to proceed without him and without the state Department of Administration shouldering much of the prosecutorial costs of these proceedings. Accordingly, these five district attorneys necessarily have an actual and non-speculative interest in the outcome of this case. That interest is distinct from the interests of all other parties.[55]

¶113 Now, despite the Three Unnamed Petitioners' clear warnings, the per curiam engages in revisionist history, stating that "at that point in time there was no need to add the district attorneys as parties because the prosecution was represented by . . . the special prosecutor."[56] But the need was clear and the problem was foreseeable. Now, at this late date, after the majority opinion has terminated the investigation, even if one or more of the district attorneys were allowed to intervene, an overwhelming amount of materials would have to be scrutinized and absorbed in order for a district attorney to get up to speed on this legally and factually complex case. The learning curve to assume responsibility for challenging past orders and opinions of this court and for representing the State in all future legal proceedings would be steep and time consuming. Such intervention might impose significant expenses on the counties.

¶114 Even though no one represents the prosecution and state going forward, an order issued today (in which I dissent) refuses to allow investigators and a law enforcement officer to

---

[55] See Petitioners' Motion to Add Five Respondents 4 (Feb. 19, 2014).

[56] Per curiam, ¶17.

intervene for the limited purpose of preserving certain materials from the John Doe investigations from destruction.[57] A third motion to intervene for the same limited purpose filed by a district attorney and two assistant district attorneys is being ignored, without explanation.

¶115 The per curiam errs in denying the motions for limited intervention.

¶116 Limited intervention is required to protect rights. Denying the motions for limited intervention, especially when the Special Prosecutor cannot continue acting as such, demonstrates hostility to the Special Prosecutor, the "prosecution team," and the State on the part of the four justices. The July 16, 2015 majority opinion is critical of the conduct of the Special Prosecutor, prosecutors, and law enforcement officers, including their conduct in execution of the search warrants. The criticism is piled on even though there is no evidence or factual findings in the record to support this criticism or to describe the execution of the search warrants.[58] Baseless attacks by this court on the Special Prosecutor, prosecutors, and law enforcement officers (or on anyone else) are, in my opinion, inexcusable.

---

[57] See the order of even date denying motions for limited intervention.

[58] The majority opinion and Justice Ziegler's concurrence to the majority opinion relied on facts that were not in the record, citing blogs and media reports as authoritative sources on how the search warrants were executed. See, e.g., majority op., ¶¶28, 68; Justice Ziegler's concurrence to the majority op., ¶¶320 & n.10, 326-29 & nn.12-22.

¶117 Since July 16, 2015, these attacks in the majority opinion have been cited as verifying that the Special Prosecutor, prosecutors, and law enforcement officers in the John Doe investigations were engaged in misconduct. For example, the Amended Complaint in Archer v. Chisholm, No. 15-cv-922-LA (E.D. Wis.), Docket No. 17, describes the July 16, 2015 majority opinion as "finding" and "holding" that the Special Prosecutor, prosecutors, and law enforcement officers "instigated 'a perfect storm of wrongs that was visited upon the innocent' targets 'and those who dared to associate with them.'"[59]

¶118 The Amended Archer Complaint, under the heading "The Wisconsin Supreme Court's Repudiation of the Investigation," also alleges that the July 16, 2015 majority opinion "found that the targets of the investigation were victims of 'the tyrannical retribution of arbitrary or capricious government prosecution'"[60] and "found" that they "subjected targets to 'paramilitary-style home invasions conducted in the pre-dawn hours' in retaliation for their free speech . . . ."[61]

---

[59] Archer v. Chisholm, No. 15-cv-922-LA (E.D. Wis.), Dkt. No. 17, at ¶96 (internal quotation marks omitted) (quoting majority op., ¶133).

[60] Archer v. Chisholm, No. 15-cv-922-LA (E.D. Wis.), Dkt. No. 17, at ¶¶95-96 (internal quotation marks omitted) (quoting majority op., ¶133).

[61] Archer v. Chisholm, No. 15-cv-922-LA (E.D. Wis.), Dkt. No. 17, at ¶97 (internal quotation marks omitted) (quoting majority op., ¶68).

¶119 In contrast, the material released from John Doe files apparently has proved helpful to prosecutors and law enforcement officers in cases in which their conduct has been challenged. See, e.g., O'Keefe v. Schmitz, No. 14-C-139, 2014 WL 1379934, at *8 (E.D. Wis. Apr. 8, 2014), rev'd in part sub nom. O'Keefe v. Chisholm, 769 F.3d 936 (7th Cir. 2014), cert. denied, 135 S. Ct. 2311 (2015) (citing sealed material from John Doe II in discussing immunity under 42 U.S.C. § 1983).

¶120 The use of released John Doe I materials in the Archer case has apparently caused a modification of the claims of abusive behavior by those who executed the search warrants.[62]

¶121 Now, the very same four justices who criticized the prosecutors and law enforcement officers for their participation in the John Doe II investigation deny the movants (who are government officers and employees) the opportunity to intervene for the limited purpose of preserving materials, including audio recordings, that they assert reveal the truth about the John Doe II investigation, including execution of the search warrants.

¶122 Instead, the per curiam suggests that the materials to be held by the Clerk of the Supreme Court "could also

---

[62] See Archer v. Chisholm, No. 15-cv-922-LA (E.D. Wis.), Dkt. No. 17; Daniel Bice, Audio of John Doe Raid Contradicts Claims by Longtime Scott Walker Aide, Milwaukee J. Sentinel, Aug. 4, 2015, available at http://www.jsonline.com/blogs/news/320568172.html; Scott Bauer, Audio contradicts Scott Walker aide's description of raid, Wis. State J., Aug. 5, 2015, available at http://host.madison.com/wsj/news/local/govt-and-politics/audio-contradicts-scott-walker-aide-s-description-of-raid/article_64e5ec3a-3b65-57e8-bc2c-f9a0dc37e505.html.

potentially be available for use in related civil proceedings, if there is a request and a determination that such use is proper under the circumstances."[63]  This aside is yet another "too little, too late" aspect of the per curiam.

¶123 The per curiam's aside is too little: it gives no assurance that the materials to be held by the Clerk will be available for prosecutors and law enforcement officers' defenses in civil proceedings stemming from the John Doe investigations at all, let alone that they will be preserved until the applicable statutes of limitations have run.  The per curiam also gives too little direction to non-parties on how to request access to the materials and what requests would be "proper under the circumstances."[64]

¶124 The per curiam is too late:  Now that the prosecution is totally unrepresented in future proceedings in these cases, and limited intervention has been denied, nobody is left to advocate for the preservation of these materials for use in proceedings stemming from the John Doe investigations.

¶125 Will this aspect of the per curiam be subject to challenge as due process gone awry?

**4.  The question remains whether the per curiam is impeding review by the United States Supreme Court by terminating the authority of the Special Prosecutor.**

---

[63] Per curiam, ¶38.

[64] Per curiam, ¶38.

¶126 On another topic relating to the termination of the authority of the Special Prosecutor, the per curiam explicitly addresses the issue of who may seek review in the United States Supreme Court. The per curiam declares that its "decision to terminate [the Special Prosecutor's] authority is not meant to interfere with the ability of the prosecution team to seek Supreme Court review."[65] Who is the "prosecution team?" The per curiam uses the phrase "prosecution team" 32 times. The phrase is never defined. Isn't the Special Prosecutor a member of the "prosecution team," and thus eligible to seek Supreme Court review under the per curiam's approach?

¶127 The per curiam recasts my point about the inability to identify members of the prosecution team as "implying that there was no group of prosecutors, investigators and others who prosecuted the John Doe II investigation, and that [the Special Prosecutor] worked alone in prosecuting the John Doe II."[66] Clearly there were prosecutors, investigators, and others involved in the John Doe II investigation. Obviously the Special Prosecutor did not work alone. However, the "prosecution team" is nowhere depicted as a static group of people. Didn't people serve with the Special Prosecutor and then leave the task? Didn't new people periodically join the Special Prosecutor? The per curiam does not say who the members of the prosecution team are or who may replace the Special

---

[65] Per curiam, ¶16 (emphasis added).

[66] Per curiam, ¶18 n.7.

Prosecutor for numerous purposes, including United States Supreme Court review.

¶128 The per curiam further declares that it wants to "avoid[] impeding in any way the ability of the prosecution team to seek certiorari review in the United States Supreme Court."[67] Nevertheless, the Special Prosecutor is the only person named in the John Doe trilogy as representing the prosecution.

¶129 I agree with the four justices joining the per curiam that in the interests of federalism, comity, and the supremacy of federal law,[68] the per curiam should not place roadblocks in the way of federal review of the decisions in the John Doe trilogy.

¶130 What a mess this court has wrought!

**5.   Based on its erroneous conclusion that the Special Prosecutor never presented evidence of illegally coordinated express advocacy to the John Doe Judge, the per curiam erroneously concludes that the investigation into coordinated express advocacy cannot continue.**

¶131 The Special Prosecutor's motion for reconsideration seeks an order permitting the John Doe investigation to continue as to coordinated express advocacy——a valid legal theory even under the majority opinion's flawed, absolutist interpretation that "Anything Goes" with regard to issue advocacy.[69]

---

[67] Per curiam, ¶29 (emphasis added).

[68] U.S. Const. art. VI, cl. 2.

[69] See my concurring/dissenting opinion to the majority op., ¶348.

34

¶132 The late Justice N. Patrick Crooks and I dissented from the July 16, 2015 majority opinion, in part because the majority opinion failed to consider this evidence.[70] The per curiam, like the majority opinion, avoids addressing this issue, this time hiding behind the doctrine of forfeiture and applying a limited standard of review to the Special Prosecutor's petition for a supervisory writ.[71]

¶133 The record demonstrates that the investigation of coordinated express advocacy should proceed. Unlawful coordination, not merely unlawful coordinated issue advocacy, has been the focus of the John Doe investigation from the very beginning.

¶134 For example, on May 31, 2013, Wisconsin Attorney General J.B. Van Hollen wrote to the Milwaukee County District Attorney declining to participate in the John Doe investigation. The letter describes the John Doe investigation as "relating to potential campaign finance violations involving campaign coordination."[72] The letter explains elsewhere that the specific area of campaign finance law that may be applicable to the

---

[70] See Justice Crooks' concurrence/dissent to the majority opinion, ¶¶559-63; see also my concurrence/dissent to the majority op., ¶352 n.11.

[71] See per curiam, ¶¶25-26. In contrast, this very limited standard of review is ignored, as I have stated, by the per curiam in terminating the Special Prosecutor's appointment and authority from this date forward. Per curiam, ¶¶6, 7.

[72] See App'x to Response Brief of Special Prosecutor, vol. 1, at 090 (emphasis added).

investigation is "coordination."[73] No reference is made in this letter to either issue advocacy or express advocacy. Rather, coordination is the prominent theme of the letter discussing the investigation.

¶135 Another example showing that coordination, not merely coordinated issue advocacy, was the focus of the investigation is the August 10, 2012 petition to commence the John Doe proceedings. The petition focuses on coordination, and is not limited to express or issue advocacy. The petition states that the investigation will focus on violations of Wis. Stat. ch. 11, and in particular on the coordination of personal political campaign committees and '501(c)(4)' organizations to circumvent the restrictions of ch. 11.[74]

¶136 Likewise, the affidavits underlying search warrants and subpoenas addressed evidence of coordination, not limited to evidence of coordinated issue advocacy or coordinated express advocacy.[75]

---

[73] See App'x to Response Brief of Special Prosecutor, vol. 1, at 090.

[74] A 501(c)(4) is described in the record as an organization able to involve itself in express advocacy, provided that "supporting or opposing candidates" does not become the organization's primary purpose.

[75] Affidavits for search warrants and subpoenas state that the use of the 501(c)(4)s was alleged to be for the purpose of circumventing the reporting and contribution provisions of Wis. Stat. §§ 11.10(4), 11.06(1), and 11.27(1), which would constitute a violation of Wis. Stat. §§ 11.26, 11.27, and 11.61(1)(b).

¶137 That no distinction was made between coordinated express advocacy and coordinated issue advocacy in these documents is not surprising. The emphasis on investigating coordination, regardless of whether the coordination was of issue advocacy or express advocacy, was supported by federal and Wisconsin law at the time. The law did not establish an inflexible distinction or set up a rigid barrier between coordinated issue advocacy and coordinated express advocacy for all purposes.[76]

¶138 In granting review in the John Doe trilogy, this court asked the parties to address "[w]hether the records in the John Doe proceedings provide a reasonable belief that Wisconsin law was violated by a campaign committee's coordination with independent advocacy organizations that engaged in express advocacy speech. If so, which records support such a reasonable belief?"[77]

---

[76] See, e.g., McConnell v. FEC, 540 U.S. 93, 193 (2003) (stating there is no "rigid barrier between express advocacy and so-called issue advocacy"); Wis. Coalition for Voter Participation v. State Elections Bd., 231 Wis. 2d 670, 682, 605 N.W.2d 654 (Ct. App. 1999) (stating "we think the [State Elections] Board was correct in observing . . . that '[i]f the mailing and the message were done in consultation with or coordination with the Justice Wilcox campaign, the [content of the message] is immaterial") (quotation omitted) (some alterations in original).

It is the majority opinion that erroneously erected a rigid barrier between coordinated issue advocacy and express advocacy on July 16, 2015, long after the investigation began.

[77] See December 16, 2014 order granting review at #10.

(continued)

37

¶139 According to the record, evidence of coordinated express advocacy on which the Special Prosecutor relies <u>was presented</u> both to the John Doe Judge and to this court.  The per curiam errs in concluding that the Special Prosecutor forfeited his argument that the search warrants and subpoenas were valid because they sought evidence of coordinated express advocacy.[78]

¶140 I agree with the following statements in Justice Crooks' concurring and dissenting opinion to the July 16, 2015 majority opinion, stating at ¶561 as follows:

> It is also imperative to note that the majority conveniently overlooks the special prosecutor's secondary argument of criminal activity in [the majority's] effort to end this John Doe investigation. Specifically, the special prosecutor seeks to investigate whether particular <u>express advocacy</u> groups coordinated their spending with candidates or candidate committees in violation of their sworn statement of independence under Wis. Stat. § 11.06(7). Despite the fact that the special prosecutor utilizes a significant portion of his brief to present evidence

---

Care must be taken when reading the word "independent" in such phrases as "independent organizations," "independent disbursement committees," or "independent advocacy organization" in the December 16, 2014 court order granting review, the July 16, 2015 majority opinion and the per curiam.  The word "independent" should be considered to be in quotation marks "because the Special Prosecutor suspected that the group's independence is ostensible rather than real." <u>O'Keefe v. Chisholm</u>, 769 F.3d 936, 937 (7th Cir. 2014), <u>cert. denied</u>, 135 S. Ct. 2311 (2015).

[78] Moreover, even if a party forfeits an issue by failing to raise it first in a prior proceeding, "we have discretion to disregard alleged forfeiture or waiver and consider the merits of any issue because the rules of forfeiture and waiver are rules of 'administration and not of power.'" <u>State v. Beamon</u>, 2013 WI 47, ¶49, 347 Wis. 2d 559, 830 N.W.2d 681 (quoting <u>State v. Riekkoff</u>, 112 Wis. 2d 119, 124, 332 N.W.2d 744 (1983)).

of such illegal coordination, the majority [opinion] determines, without explanation, that the John Doe investigation is over.

¶141 The John Doe Judge made clearly erroneous factual findings when he stated that the "State is not claiming that any of the independent organizations expressly advocated,"[79] and "[t]here is no evidence of express advocacy"[80] justifying the issuance of a supervisory writ.

¶142 After the John Doe Judge accepted the Unnamed Movants' arguments distinguishing between coordinated express advocacy and coordinated issue advocacy, the Special Prosecutor raised the issue of coordinated express advocacy in his court of appeals petition for supervisory writ. This court granted bypass to review the issue.[81]

¶143 The legal arguments and evidence the Special Prosecutor presented to the John Doe Judge and to this court provide "reason to believe" a crime was committed by coordinated express advocacy. The Special Prosecutor need not prove a criminal violation at the inception of the John Doe investigation and need not demonstrate probable cause at the outset. All that the Special Prosecutor must demonstrate is a "reason to believe" a crime was committed.[82] He has done so.

---

[79] Majority op., ¶34.

[80] Majority op., ¶34.

[81] See December 16, 2014 order granting review on the issue of express advocacy, #10.

[82] State ex rel. Reimann v. Circuit Court, 214 Wis. 2d 605, 623, 571 N.W.2d 385 (1997) (citing Wis. Stat. § 968.26).

39

¶144 Accordingly, reconsideration should be granted and the investigation into coordinated express advocacy should continue.

**6. The per curiam constructs the "clear and hold" mandate in a factual vacuum and the mandate will require further clarification. Indeed the Unnamed Movants do not agree in their recommendations to the court about the disposition of the materials.**

¶145 The per curiam's "clear and hold" mandate is built on a shaky foundation. It will not hold up under the stress of implementation. The per curiam constructs its new mandate out of whole cloth by piecing together information about what investigative materials exist and their location from the parties' filings, without any guarantee that these facts and arguments are correct or exhaustive. Simply put, the four justices do not have the facts. They are writing in a factual vacuum, issuing the per curiam mandate in the dark.

¶146 The per curiam compounds this error by crafting its new mandate without notice to the parties and without giving them an opportunity to address what materials should be "cleared" and how they should be "held."

¶147 Ignoring the Special Prosecutor's admonition about the risks of issuing an order not fully understanding the items and materials at issue, the per curiam offers explicit instructions for different types of materials.

¶148 The court does not have access to all these materials and lacks full knowledge about each of them or their value to the Special Prosecutor, the "prosecution team," the Unnamed

Movants, or the "universe of individuals" of which the per curiam writes. Especially significant is that the Unnamed Movants do not agree in their recommendations to the court about what should be done with different kinds of materials. Parties on both sides of the "v." disagree about the materials involved.

¶149 Given this disagreement and uncertainty about the materials involved, it is likely that the per curiam's "clear and hold" mandate, like the July 16, 2015 majority opinion's "search and destroy" mandate, cannot be implemented without further interpretation, clarification, and modification.

### 7. The per curiam is unclear about whom it binds.

¶150 The per curiam imposes obligations not only on the Special Prosecutor but also on unnamed persons, including the undefined "prosecution team."[83] As I have stated previously, the per curiam uses the undefined phrase "prosecution team" 32 times. To what extent does the majority opinion or per curiam bind anyone other than the two Unnamed Movants who filed the original action or the eight Unnamed Movants and the Special Prosecutor? Not clear![84]

### 8. The per curiam ignores the Special Prosecutor's argument that evidence obtained through the subpoenas and search warrants

---

[83] See, e.g., per curiam, ¶¶31-32, 34, 36.

[84] The original action was brought by Two Unnamed Movants. A question arises whether the Special Prosecutor's investigation of individuals and organizations that are not parties to the original action is affected by the majority opinion and per curiam. See my concurrence/dissent to the majority op., ¶352 n.11; Madison Teachers, Inc. v. Walker, 2013 WI 91, ¶20, 351 Wis. 2d 237, 839 N.W.2d 388 (limiting the scope of a judgment).

**should be retained under the good faith exception in Fourth**

**Amendment suppression jurisprudence.**

¶151 The per curiam recognizes that the Special Prosecutor's authority was intact when the subpoenas and search warrants were issued.[85]  The subpoenas and search warrants were based on the campaign finance laws existing at that time regulating coordinated advocacy.[86]

¶152 The per curiam does not address the Special Prosecutor's reliance on the "good faith exception" in Fourth Amendment suppression jurisprudence to support retention of John Doe evidence that need not be suppressed in subsequent criminal proceedings.

**9.   The per curiam leaves many foreseeable questions**

**unanswered.**

¶153 Some of the foreseeable but unanswered questions are as follows:

- How will the parties and interested non-parties be able to access the materials to be maintained under seal by the Clerk of the Supreme Court?[87]

- At least one federal civil rights lawsuit arising out of the John Doe investigations is currently pending and others

---

[85] Per curiam, ¶13.

[86] See, e.g., Wis. Coalition for Voter Participation, Inc. v. State Elections Bd., 231 Wis. 2d 670, 605 N.W.2d 654 (Ct. App. 1999); Wis. El. Bd. Op. 00-2 (reaffirmed Mar. 26, 2008).

[87] Per curiam, ¶38.

will likely be filed in the future.[88] How will the court address the interests of persons involved in these lawsuits if they seek access to or use of these materials? Will these materials be preserved until the applicable statutes of limitations have run? What effect, if any, do the recent statutory revisions to the John Doe statutes have on these questions?[89]

- What continuing authority, if any, do the two John Doe Judges have? May materials continue to be filed before the John Doe Judges or only in this court? What is the authority of the John Doe Judge over materials, including motions, filed with the John Doe Judge after the records were sent to this court in January 2015?[90] May the John Doe judge continue to issue orders authorizing the release of

---

[88] See, e.g., Archer v. Chisholm, No. 15-cv-922-LA (E.D. Wis.).

The authority of the Government Accountability Board is also being challenged in a proceeding arising out of these investigations. See O'Keefe v. Wis. Gov't Accountability Bd., No. 2014CV1139 (Waukesha Cnty. Cir. Ct.).

[89] See Wis. Stat. § 968.26(1b)(b).

[90] Records filed with the John Doe Judge after the records were transmitted to this court in January 2015 were ordinarily not transmitted to this court. For example, a motion was filed by Unnamed Movants with the John Doe Judge on July 17, 2015 (the day after the majority opinion was released) seeking relief from the John Doe Judge. The motion included confidential material that Waukesha County Circuit Court Judge Lee Dreyfus (presiding in O'Keefe v. Wisconsin Government Accountability Board, No. 2014CV1139 (Waukesha Cnty. Cir. Ct.)) apparently authorized to be released to the John Doe Judge. This confidential material has been filed under seal in this court.

43

materials seized in the investigations for use in the defense of pending lawsuits? What effect, if any, do the recent statutory revisions to the John Doe statutes have on these questions?[91]

- To what extent does the majority opinion or per curiam bind anyone other than the two Unnamed Movants who filed the original action or the eight Unnamed Movants and the Special Prosecutor?

- What is the significance of the secrecy and record inspection provisions of Wis. Stat. § 968.26(3) (2013-14) in these proceedings?

- How will the court address present and future matters before the court (of which there are many) in the absence of any representation for the prosecution and State?

¶154 These questions are not merely hypothetical or conjectural; they are immediately relevant to the majority opinion, the per curiam, and motions and other filings currently pending before the court. The per curiam's attempts to resolve issues are piecemeal, superficial, and temporary. The per curiam ensures that the John Doe trilogy will continue to dominate the court's work immediately and for a long time to come.

¶155 I repeat, in response to the motion for reconsideration, the per curiam significantly modifies the July 16, 2015 majority opinion by creative writing devoid of

---

[91] See Wis. Stat. § 968.26(1b)(b).

supporting legal authority. Furthermore, events subsequent to the motion for reconsideration have overtaken the per curiam. In sum, the per curiam embraces confusing and conflicting positions, all the while leaving many important issues unresolved, including those posed by events subsequent to the motion for reconsideration.

¶156 For the reasons set forth, I concur in part, dissent in part, and write separately.

**ATTACHMENT A: All Sealed Filings After 7/16/15**

| | **Party or Sender** | **Document** | **Date Filed** |
|---|---|---|---|
| 1. | Special Prosecutor | Motion for reconsideration, stay, or clarification of mandate | 8/4/15 |
| 2. | Unnamed Movant 2 | Letter to court | 8/6/15 |
| 3. | Unnamed Movant 2 | Letter to Chief Justice | 8/7/15 |
| 4. | Chief Justice | E-mail exchange | 8/7/15 |
| 5. | Unnamed Movant 7 | Letter to Chief Justice | 8/7/15 |
| 6. | Judge Neal Nettesheim | Letter to Chief Justice | 8/10/15 |
| 7. | Unnamed Movants 4 and 5 | Letter to Chief Justice | 8/10/15 |
| 8. | Unnamed Movant 7 (joined by Unnamed Movant 2) | Letter to Chief Justice | 8/10/15 |
| 9. | Special Prosecutor | Letter to Supreme Court Clerk | 8/11/15 |
| 10. | Unnamed Movant 2 | E-mail to Chief Justice | 8/12/15 |
| 11. | Judge Gregory Peterson | E-mail to counsel for Unnamed Movant 2 | 8/12/15 |
| 12. | Judge Neal Nettesheim | E-mail to Chief Justice | 8/12/15 |
| 13. | Unnamed Movant 1 | Response to motion for reconsideration | 8/13/15 |
| 14. | Judge Neal Nettesheim | E-mail to Chief Justice | 8/13/15 |
| 15. | Special Prosecutor | Letter to Justices of Supreme Court | 8/14/15 |
| 16. | Unnamed Movant 7 | Letter to Justices of Supreme Court | 8/14/15 |
| 17. | Unnamed Movants 2, 3, 6, 7, & 8 | Response to motion for reconsideration | 8/14/15 |
| 18. | Unnamed Movants 4 & 5 | Response to motion for reconsideration | 8/14/15 |
| 19. | Investigators | Motion for limited intervention | 8/19/15 |
| 20. | Special Prosecutor | Motion to strike portions of Unnamed Movants 2, 3, 6, 7, & 8's response to the motion for reconsideration or, alternatively, for leave to file a reply | 8/25/15 |
| 21. | Unnamed Movant 2 (joined by | Response to motion for intervention | 8/28/15 |

# ATTACHMENT B

Updated 2013–14 Wis. Stats. Published and certified under s. 35.18. November 19, 2015.

(b) Is placed in or transferred to a juvenile correctional facility, as defined in s. 938.02 (10p), or a secured residential care center for children and youth, as defined in s. 938.02 (15g).

(c) Is committed, transferred or admitted under ch. 51, 971 or 975.

(d) Is confined as a condition of probation under s. 973.09 (4).

**History:** 1979 c. 240; 1981 c. 297; 1987 a. 332; 1991 a. 17; 1993 a. 95, 105; 1995 a. 77, 154; 1997 a. 35; 1999 a. 9; 2001 a. 109; 2005 a. 344; 2011 a. 35; 2013 a. 317; s. 35.17 correction in (1) (a) 5.

A visual body cavity search is more intrusive than a strip search. It is not objectively reasonable for police to conclude that consent to a strip search includes consent to scrutiny of body cavities. State v. Wallace, 2002 WI App 61, 251 Wis. 2d 625, 642 N.W.2d 549, 00−3524.

This section is a regulatory statute aimed at controlling law enforcement officers' conduct via criminal penalties. It does not mention probable cause and authorizes no motions to quash or limit the search. When there was no violation of any constitutional right but merely of the statute itself, the violation of the statute provided no basis for a suppression motion. State v. Minett, 2014 WI App 40, 353 Wis. 2d 484, 846 N.W.2d 831, 13−0634.

Intrusive searches of the mouth, nose, or ears are not covered by sub. (3). However, searches of those body orifices should be conducted by medical personnel to comply with the 4th and 5th amendments. 71 Atty. Gen. 12.

## 968.256 Search of physically disabled person. (1) In this section, "physically disabled person" means a person who requires an assistive device for mobility, including, but not limited to, a wheelchair, brace, crutch or artificial limb.

(2) A search of a physically disabled person shall be conducted in a careful manner. If a search of a physically disabled person requires the removal of an assistive device or involves a person lacking sensation in some portion of his or her body, the search shall be conducted with extreme care by a person who has had training in handling physically disabled persons.

**History:** 1979 c. 240.

## 968.26 John Doe proceeding. (1b) In this section:

(a) "Crime" means any of the following:

1. Any Class A, B, C, or D felony under chs. 940 to 948 or 961.

2. A violation of any of the following if it is a Class E, F, G, H, or I felony:

a. Section 940.04, 940.11, 940.19 (2), (4), (5), or (6), 940.195 (2), (4), (5), or (6), 940.20, 940.201, 940.203, 940.205, 940.207, 940.208, 940.22 (2), 940.225 (3), 940.29, 940.302 (2) (c), 940.32, 941.32, 941.38 (2), 942.09 (2), 943.10, 943.205, 943.32 (1), 946.43, 946.44, 946.47, 946.48, 948.02 (3), 948.03 (2) (b) or (c), (3), or (4), 948.04, 948.055, 948.095, 948.10 (1) (a), 948.11, 948.13 (2) (a), 948.14, 948.20, 948.23 (1), (2), or (3) (c) 2. or 3., or 948.30 (1).

b. Section 940.285 (2) if s. 940.285 (2) (b) 1m., 1r., or 2. applies; s. 940.295 (3) (a) if s. 940.295 (3) (b) 1m., 1r., 2., or 3. applies; s. 948.05 (1), (1m), or (2) if s. 948.05 (2p) (b) applies; s. 948.12 (1m) or (2m) if s. 948.12 (3) (b) applies; or s. 948.21 if s. 948.21 (1) (b) or (c) applies.

3. A violation of s. 940.03.

4. A violation of s. 946.83 or 946.85, if the racketeering activity is listed in s. 946.82 (4) and in subd. 1., 2., or 3.

4m. A solicitation, conspiracy, or attempt to commit any violation under subd. 1., 2., 3., or 4.

5. Any conduct that is prohibited by state law and punishable by fine or imprisonment or both if the individual who allegedly participated in the conduct was a law enforcement officer; a correctional officer; or a state probation, parole, or extended supervision officer and the individual was engaged in his or her official duties at the time of the alleged conduct.

(b) "Judge" does not include a permanent reserve judge, as defined in s. 753.075 (1) (a), or a temporary reserve judge, as defined in s. 753.075 (1) (b).

(1m) If a district attorney requests a judge to convene a proceeding to determine whether a crime has been committed in the court's jurisdiction, the judge shall convene a proceeding described under sub. (3) and shall subpoena and examine any witnesses the district attorney identifies.

(2) (a) Except in par. (am), in this subsection, "district attorney" includes a prosecutor to whom the judge has referred the complaint under par. (am).

(am) If a person who is not a district attorney complains to a judge that he or she has reason to believe that a crime has been committed within the judge's jurisdiction, the judge shall refer the complaint to the district attorney or, if the complaint may relate to the conduct of the district attorney, to another prosecutor under s. 978.045.

(b) If a district attorney receives a referral under par. (am), the district attorney shall, within 90 days of receiving the referral, issue charges or refuse to issue charges. If the district attorney refuses to issue charges, the district attorney shall forward to the judge in whose jurisdiction the crime has allegedly been committed all law enforcement investigative reports on the matter that are in the custody of the district attorney, his or her records and case files on the matter, and a written explanation why he or she refused to issue charges. The judge may require a law enforcement agency to provide to him or her any investigative reports that the law enforcement agency has on the matter. The judge shall convene a proceeding as described under sub. (3) if he or she determines that a proceeding is necessary to determine if a crime has been committed. When determining if a proceeding is necessary, the judge may consider the law enforcement investigative reports, the records and case files of the district attorney, and any other written records that the judge finds relevant.

(c) In a proceeding convened under par. (b), the judge shall subpoena and examine under oath the complainant and any witnesses that the judge determines to be necessary and appropriate to ascertain whether a crime has been committed and by whom committed. The judge shall consider the credibility of testimony in support of and opposed to the person's complaint.

(d) In a proceeding convened under par. (b), the judge may issue a criminal complaint if the judge finds sufficient credible evidence to warrant a prosecution of the complaint. The judge shall consider, in addition to any testimony under par. (c), the law enforcement investigative reports, the records and case files of the district attorney, and any other written reports that the judge finds relevant.

(3) (a) Except as provided in sub. (5), the extent to which the judge may proceed in an examination under sub. (1m) or (2) is within the judge's discretion.

(b) The examination may be adjourned.

(c) Any witness examined under this section may have counsel present at the examination but the counsel shall not be allowed to examine his or her client, cross−examine other witnesses, or argue before the judge.

(d) A court, on the motion of a district attorney, may compel a person to testify or produce evidence under s. 972.08 (1). The person is immune from prosecution as provided in s. 972.08 (1), subject to the restrictions under s. 972.085.

(4) (a) The judge may enter a secrecy order upon a showing of good cause by the district attorney. A secrecy order under this paragraph may apply to only the judge, a district attorney or other prosecuting attorney who participates in a proceeding under this section, law enforcement personnel admitted to a proceeding under this section, an interpreter who participates in a proceeding under this section, or a reporter who makes or transcribes a record of a proceeding under this section. No secrecy order under this section may apply to any other person.

(b) If a judge enters a secrecy order under par. (a), the judge shall terminate that secrecy order if any person applies to the judge for the termination and establishes that the good cause shown under par. (a) no longer exists. If a judge terminates a secrecy order entered under par. (a), the identity of the subject of the proceeding under this section may not be disclosed without the subject's consent, except as provided in par. (c).

(c) If a criminal complaint is filed following a proceeding in which the judge entered a secrecy order, the order is terminated at

*2013−14 Wisconsin Statutes updated through 2015 Wis. Act 113 and all Supreme Court Orders entered before November 19, 2015. Published and certified under s. 35.18. Changes effective after November 19, 2015 are designated by NOTES. (Published 11−19−15)*

1

Updated 2013–14 Wis. Stats. Published and certified under s. 35.18. November 19, 2015.

968.26 COMMENCEMENT OF CRIMINAL PROCEEDINGS Updated 13–14 Wis. Stats. 14

the initial appearance and s. 971.23 governs disclosure of information from a proceeding under this section.

(d) Any person who violates a secrecy order entered under par. (a) is subject to a fine not to exceed $10,000 or imprisonment not to exceed 9 months, or both.

**(5)** (a) 1. Except as provided in subd. 2., no proceeding may last longer than the following:

a. If the proceeding begins under sub. (1m), 6 months beginning on the day the district attorney requests the judge to convene the proceeding.

b. If the proceeding begins under sub. (2), 6 months beginning on the day the district attorney forwards under sub. (2) (b) to a judge all reports, records and case files, and an explanation of his or her refusal.

2. The period under subd. 1. may be extended only if a majority of judicial administrative district chief judges find good cause for the extension and identification of the vote of each judge is available to the public. The period under subd. 1. may be extended an unlimited number of times, but each extension may be for no more than 6 months and, for each extension, a majority of judicial administrative district chief judges must find good cause and the identification of the vote of each judge must be available to the public.

(b) A proceeding may not investigate a crime that was not part of the original request under sub. (1m) or complaint under sub. (2) (a), whichever is appropriate, unless a majority of judicial administrative district chief judges find good cause to add specified crimes and the identification of the vote of each judge is available to the public. An unlimited number of specified crimes may be added but, for each addition of a specified crime, a majority of judicial administrative district chief judges must find good cause and the identification of the vote of each judge must be available to the public.

(c) A judge may issue a search warrant relating to a proceeding under this section only if the judge is not presiding over that proceeding.

**(6)** Records reflecting the costs of an investigation and proceedings under sub. (3) are subject to the provisions of subch. II of ch. 19. If a request to inspect or copy a record is received, but no record exists, then, notwithstanding s. 19.35 (1) (L), the recipient of the request shall provide a summary amount of the costs.

**(7)** If property was seized during a proceeding under this section, the judge shall, at the close of the proceeding, order notice as he or she determines to be adequate to all persons who have or may have an interest in the property.

**History:** 1989 a. 122; 1991 a. 88, 223, 315; 2009 a. 24; 2015 a. 64.

A defendant must be allowed to use testimony of witnesses at a secret John Doe proceeding to impeach the same witnesses at the trial, even if the prosecution does not use the John Doe testimony. Myers v. State, 60 Wis. 2d 248, 208 N.W.2d 311 (1973).

An immunity hearing must be in open court. State ex rel. Newspapers, Inc. v. Circuit Court, 65 Wis. 2d 66, 221 N.W.2d 894 (1974).

A person charged as a result of a John Doe proceeding has no recognized interest in the maintenance of secrecy in that proceeding. John Doe proceedings are discussed. State v. O'Connor, 77 Wis. 2d 261, 252 N.W.2d 671 (1971).

No restriction under the 4th or 5th amendment precludes the enforcement of an order for handwriting exemplars directed by a presiding judge in a John Doe proceeding. State v. Doe, 78 Wis. 2d 161, 254 N.W.2d 210 (1977).

Due process does not require that a John Doe witness be advised of the nature of the proceeding or that the witness is a "target" of the investigation. Ryan v. State, 79 Wis. 2d 83, 255 N.W.2d 910 (1977).

This section does not violate the constitutional separation of powers doctrine. John Doe proceedings are discussed. State v. Washington, 83 Wis. 2d 808, 266 N.W.2d 597 (1978).

A balance between the public's right to know and the need for secrecy in John Doe proceedings is discussed. In re Wis. Family Counseling Services v. State, 95 Wis. 2d 670, 291 N.W.2d 631 (Ct. App. 1980).

A John Doe judge may not issue a material witness warrant under s. 969.01 (3). State v. Brady, 118 Wis. 2d 154, 345 N.W.2d 533 (Ct. App. 1984).

When a John Doe proceeding is not a joint executive and judicial undertaking, the procedure does not violate the separation of powers doctrine and is constitutional. State v. Unnamed Defendant, 150 Wis. 2d 352, 441 N.W.2d 696 (1989).

A John Doe judge may issue and seal a search warrant, and a district attorney may independently issue a criminal complaint, regardless of the existence of the John Doe. A John Doe cannot be used to obtain evidence against a defendant who has already

been charged. State v. Cummings, 199 Wis. 2d 721, 546 N.W.2d 406 (1996), 93–2445.

To be entitled to a hearing, a John Doe complainant must do more than merely allege in conclusory terms that a crime has been committed. The complainant's petition must allege facts that raise a reasonable belief that a crime has been committed. State ex rel. Reimann v. Circuit Court for Dane County, 214 Wis. 2d 605, 571 N.W.2d 385 (1997), 96–2361.

A nonlawyer's questioning of a witness on the state's behalf at a John Doe hearing even if constituting the unauthorized practice of law did not require exclusion of the testimony at trial. State v. Noble, 2002 WI 64, 253 Wis. 2d 206, 646 N.W.2d 38, 99–3271.

Article VII, Section 5 (3), read together with ss. 808.03 (2) and 809.51 (1) is sufficiently broad in scope to permit the court of appeals to exercise supervisory jurisdiction over the actions of a judge presiding over a John Doe proceeding. When rendering judicial decisions in the context of a John Doe proceeding, the judge must create a record for possible review. On review of a petition for a writ stemming from a secret John Doe proceeding, the court of appeals may seal parts of a record in order to comply with existing secrecy orders issued by the John Doe judge. Unnamed Persons Numbers 1, 2, and 3 v. State, 2003 WI 30, 260 Wis. 2d 653, 660 N.W.2d 260, 01–3220.

A John Doe judge must have the authority to disqualify counsel, and may permit argument by counsel when necessary to ensure procedural fairness. Unnamed Persons Numbers 1, 2, and 3 v. State, 2003 WI 30, 260 Wis. 2d 653, 660 N.W.2d 260, 01–3220.

The John Doe judge erred as a matter of law by requiring an oath of secrecy from a witness's counsel when a secrecy order was in effect. Individual Subpoenaed to Appear at Waukesha County John Doe Case No. 2003 JD 001 v. Davis, 2005 WI 70, 281 Wis. 2d 431, 697 N.W.2d 803, 04–1804.

The circuit judge erred when in reviewing a John Doe petition he reviewed police reports containing information casting doubt on assertions in the petition and explained that his review of the petition and the police reports led him to conclude that the petitioner failed to allege facts sufficient to raise a reasonable belief that a crime has been committed. This section does not permit this sort of analysis at the threshold stage of determining whether a petition contains reason to believe that a crime has been committed. Williams v. Fiedler, 2005 WI App 91, 282 Wis. 2d 486, 698 N.W.2d 294, 04–0175.

A John Doe judge has exclusive authority to subpoena witnesses in a John Doe proceeding based upon the language of this section. Hipp v. Circuit Court for Milwaukee County, 2008 WI 67, 310 Wis. 2d 342, 750 N.W.2d 837, 07–0230.

The judge in a John Doe hearing is not required to examine all the witnesses a complainant produces and to issue subpoenas to all the witnesses a complainant wishes to produce. This section extends judicial discretion in a John Doe hearing not only to the scope of a witness's examination, but also to whether a witness need testify at all. Robins v. Madden, 2009 WI 46, 317 Wis. 2d 364, 766 N.W.2d 542, 07–1526.

Under sub. (3), as revised by 2009 Wis. Act 24, a John Doe judge must potentially undertake four inquiries: 1) decide whether to refer the John Doe complaint to the district attorney in the first instance; 2) decide whether it is necessary to conduct any additional proceedings if the district attorney chooses not to issue charges; 3) determine what, if any, witnesses to subpoena and examine if additional proceedings are deemed necessary; and 4) decide whether to issue a criminal complaint if the judge finds that the additional proceedings have produced sufficient credible evidence to warrant prosecution. Naseer v. Miller, 2010 WI App 142, 329 Wis. 2d 724, 793 N.W.2d 209, 09–2578.

Under the statute, as amended by 2009 Wis. Act 24, a judge has a mandatory duty to refer a John Doe complaint to the district attorney only if the four corners of the complaint provide a sufficient factual basis to establish an objective reason to believe that a crime has been committed in the judge's jurisdiction, the same as under the prior statute. Naseer v. Miller, 2010 WI App 142, 329 Wis. 2d 724, 793 N.W.2d 209, 09–2578.

This section grants John Doe judges broad authority to conduct an investigation into alleged crimes. The judge is also given those powers necessary to carry out this duty. The judge is the governor of the proceedings, and is responsible for maintaining the good order, dignity, and insofar as it is compatible with the administration of justice, efficiency of those proceedings. State of Wisconsin ex rel. Schmitz v. Peterson, 2015 WI 85, ___ Wis. 2d ___, ___ N.W.2d ___, 14–0421.

Applicable law allows electronic transmission of certain confidential case information among clerks of circuit court, county sheriff's offices, and the Department of Justice through electronic interfaces involving the Department of Administration's Office of Justice Assistance, specifically including electronic data messages about an arrest warrant if the warrant was issued in John Doe proceedings that have been sealed under this section. OAG 2–10.

Limits of judge's authority in presiding over or conducting John Doe proceedings are discussed. 76 Atty. Gen. 217.

## 968.265 Lie detector tests; sexual assault victims.

**(1)** In this section, "lie detector" has the meaning given in s. 111.37 (1) (b).

**(2)** If a person reports to a law enforcement officer that he or she was the victim of an offense under s. 940.22 (2), 940.225, 948.02 (1) or (2), or 948.085, no law enforcement officer may in connection with the report order, request, or suggest that the person submit to a test using a lie detector, or provide the person information regarding tests using lie detectors unless the person requests information regarding tests using lie detectors.

**(3)** If a person reports to a district attorney that he or she was the victim of an offense under s. 940.22 (2), 940.225, 948.02 (1) or (2), or 948.085, no district attorney may do any of the following in connection with the report:

Updated 2013–14 Wis. Stats. Published and certified under s. 35.18. November 19, 2015.

district attorney of the prosecutorial unit, may file and prosecute sexually violent person commitment proceedings under ch. 980 in any prosecutorial unit in this state.

**(2)** If an assistant district attorney assigned under sub. (1) prosecutes or assists in the prosecution of a case under ch. 980 in a prosecutorial unit other than his or her own, the prosecutorial unit in which the case is heard shall reimburse the assistant district attorney's own prosecutorial unit for his or her reasonable costs associated with the prosecution, including transportation, lodging, and meals. Unless otherwise agreed upon by the prosecutorial units involved, the court hearing the case shall determine the amount of money to be reimbursed for expert witness fees under this subsection.

History: 1999 a. 9; 2005 a. 434.

**978.045 Special prosecutors. (1g)** A court on its own motion may appoint a special prosecutor under sub. (1r) or a district attorney may request a court to appoint a special prosecutor under that subsection. Before a court appoints a special prosecutor on its own motion or at the request of a district attorney for an appointment that exceeds 6 hours per case, the court or district attorney shall request assistance from a district attorney, deputy district attorney or assistant district attorney from other prosecutorial units or an assistant attorney general. A district attorney requesting the appointment of a special prosecutor, or a court if the court is appointing a special prosecutor on its own motion, shall notify the department of administration, on a form provided by that department, of the district attorney's or the court's inability to obtain assistance from another prosecutorial unit or from an assistant attorney general.

**(1r)** (am) Any judge of a court of record, by an order entered in the record stating the cause for it, may appoint an attorney as a special prosecutor to perform, for the time being, or for the trial of the accused person, the duties of the district attorney. An attorney appointed under this subsection shall have all of the powers of the district attorney.

(bm) The judge may appoint an attorney as a special prosecutor at the request of a district attorney to assist the district attorney in the prosecution of persons charged with a crime, in grand jury proceedings, in proceedings under ch. 980, or in investigations. The judge may appoint an attorney as a special prosecutor only if the judge or the requesting district attorney submits an affidavit to the department of administration attesting that any of the following conditions exists:

NOTE: Par. (bm) (intro.) is shown as affected by 2015 Wis. Acts 55 and 64 and as merged by the legislative reference bureau under s. 13.92 (2) (i).

1. There is no district attorney for the county.

2. The district attorney is absent from the county.

2m. The district attorney, or a deputy or assistant district attorney for the district attorney office, is on parental leave.

3. The district attorney has acted as the attorney for a party accused in relation to the matter of which the accused stands charged and for which the accused is to be tried.

4. The district attorney is near of kin to the party to be tried on a criminal charge.

5. The district attorney is unable to attend to his or her duties due to a health issue or has a mental incapacity that impairs his or her ability to substantially perform his or her duties.

6. The district attorney is serving in the U.S. armed forces.

7. The district attorney stands charged with a crime and the governor has not acted under s. 17.11.

8. The district attorney determines that a conflict of interest exists regarding the district attorney or the district attorney staff.

(cm) The judge may not appoint an attorney as a special prosecutor to assist the district attorney in John Doe proceedings under s. 968.26 unless a condition under par. (bm) 1. to 8. exists or unless the judge determines that a complaint received under s. 968.26 (2) (am) relates to the conduct of the district attorney to whom the judge otherwise would refer the complaint. This paragraph does not prohibit assistance authorized by s. 978.05 (8).

**(2)** If the department of administration approves the appointment of a special prosecutor under sub. (1r), the court shall fix the amount of compensation for the attorney appointed according to the rates specified in s. 977.08 (4m) (b). The department of administration shall pay the compensation ordered by the court from the appropriation under s. 20.475 (1) (d). The court, district attorney, and the special prosecutor shall provide any information regarding a payment of compensation that the department requests. Any payment under this subsection earns interest on the balance due from the 121st day after receipt of a properly completed invoice or receipt and acceptance of the property or service under the order or contract, whichever is later, at the rate specified in s. 71.82 (1) (a) compounded monthly.

**(3)** (a) If an attorney is available and willing to serve as a special prosecutor without state compensation, the district attorney may appoint the attorney as a public service special prosecutor to serve at the pleasure of the district attorney. The public service special prosecutor may perform the duties and has the powers of the district attorney while acting under such an appointment, but is not subject to the appointment procedure under subs. (1g) and (1r) or to the compensation under sub. (2). A full–time public service special prosecutor may not engage in a private practice of law while serving under this paragraph. A part–time public service special prosecutor may engage in a private practice of law while serving under this paragraph.

(b) A law firm or other employer employing an attorney who is appointed as a public service special prosecutor may continue to pay, for a period of not more than 4 months, the salary and fringe benefits of the attorney while he or she serves under par. (a). If the public service special prosecutor receives any such payments, the prosecutor's law firm and the prosecutor are subject to the following restrictions:

1. The law firm may not participate in any of the cases in which the public service special prosecutor participates.

2. The public service special prosecutor may not consult with any attorney in or employee of the law firm about any criminal case in which the public service special prosecutor participates except as necessary to ensure compliance with this subsection.

(c) An attorney serving as a public service special prosecutor under par. (a) is considered to be a public employee for purposes of s. 895.46. A law firm or employer described under par. (b) is not liable for any acts or omissions of a public service special prosecutor while acting in his or her official capacity or performing duties or exercising powers under par. (a).

History: 1989 a. 117; 1991 a. 39, 188; 1993 a. 16; 1995 a. 27; 1997 a. 27; 2005 a. 434; 2009 a. 24; 2015 a. 55, 64; s. 13.92 (2) (i).

A defect in an appointment under sub. (1r) that was not central to the statutory scheme of s. 978.045 was cured by a subsequent court order entered *nunc pro tunc.* The court did not lose competence to proceed in a matter brought by the special prosecutor. State v. Bollig, 222 Wis. 2d 558, 587 N.W.2d 908 (Ct. App. 1998), 97–2231.

A court may appoint a special prosecutor on request of a district attorney or upon its own motion. Any restrictions on the appointment under this section is triggered only when the appointment is made at the request of a district attorney, not when made by the court on its own motion. State v. Carlson, 2002 WI App 44, 250 Wis. 2d 562, 641 N.W.2d 451, 01–1088.

**978.047 Investigators; police powers.** The district attorney of any county may appoint such investigators as are authorized by the county board, and the county board may abolish the positions at its pleasure. The investigators when so appointed have general police powers within the county.

History: 1989 a. 117; 1993 a. 51.

**978.05 Duties of the district attorney.** The district attorney shall:

**(1)** CRIMINAL ACTIONS. Except as otherwise provided by law, prosecute all criminal actions before any court within his or her prosecutorial unit and have sole responsibility for prosecution of all criminal actions arising from violations of chs. 5 to 12, subch. III of ch. 13, or subch. III of ch. 19 and from violations of other

*2013–14 Wisconsin Statutes updated through 2015 Wis. Act 113 and all Supreme Court Orders entered before November 19, 2015. Published and certified under s. 35.18. Changes effective after November 19, 2015 are designated by NOTES. (Published 11–19–15)*

3

**ATTACHMENT C**

STATE OF WISCONSIN
SUPREME COURT

RECEIVED

FEB 1 9 2014

CLERK OF SUPREME COURT
OF WISCONSIN

Nos. 2013AP2504 through 2508

_____

STATE OF WISCONSIN EX REL.
THREE UNNAMED PETITIONERS,

*Petitioners,*

*v.*

HON. GREGORY A. PETERSON,
John Doe judge, *and* FRANCIS D. SCHMITZ,
special prosecutor, *et al.*,

*Respondents.*

_____

PETITIONERS' MOTION TO ADD
FIVE RESPONDENTS

_____

Concerning
**John Doe Investigative Proceeding in Five Counties,**
Hon. Barbara A. Kluka, Presiding
Columbia County No. 13-JD-011; Dane County No. 13-JD-009
Dodge County No. 13-JD-006; Iowa County No. 13-JD-001;
Milwaukee County No. 12-JD-023

_____

4

Dean A. Strang
STRANGBRADLEY, LLC
10 East Doty Street
Madison, Wisconsin 53703
[608] 535-1550
Wisconsin Bar No. 1009868
*Counsel for Unnamed
Petitioner No. 1*

Todd P. Graves
Edward D. Greim
GRAVES GARRETT LLC
1100 Main Street
Suite 2700
Kansas City, Missouri 64105
[816] 256-3181
*Counsel for Unnamed
Petitioner No. 2*

Matthew W. O'Neill
FOX, O'NEILL & SHANNON, S.C.
622 North Water Street, Suite 500
Milwaukee, Wisconsin 53202-4910
[414] 273-3939
Wisconsin Bar No. 1019269
*Counsel for Unnamed Petitioner No. 2*

Michael J. Bresnick
Julie O'Sullivan
Edward H. Meyers
Philip J. O'Beirne
STEIN MITCHELL MUSE & CIPPOLLONE, LLP
1100 Connecticut Avenue, NW
Washington, DC 20036
[202] 737-7777
*Counsel for Unnamed Petitioner No. 3*

Dennis P. Coffey
MAWICKE & GOISMAN, S.C.
1509 N. Prospect Avenue
Milwaukee, Wisconsin 53202-2323
[414] 224-0600
Wisconsin Bar No. 1014434
*Counsel for Unnamed Petitioner No. 3*

Three Unnamed Petitioners, by undersigned counsel on behalf of all three on this administrative issue, now move the Court to add as Respondents the District Attorneys of Columbia, Dane, Dodge, Iowa and Milwaukee Counties, should this Court grant the accompanying petition for review. If the Court denies the petition for review, this motion will be moot.

Petitioners offer the following reasons for adding five district attorneys as respondents, should the Court grant the petition for review:

1. The five counties listed above are the five involved in the John Doe proceedings underlying this case. As the Court of Appeals' decision and the pleadings below explain, the district attorneys in each of these counties played a role in commencing and continuing the John Doe proceedings in their respective counties.

2. Although the five district attorneys were not respondents in the Court of Appeals below, the responsive filings of the Special Prosecutor, Francis D. Schmitz, revealed that factually four district attorneys were involved in this investigation from not later than June 2013, and that they remain involved in it now. The fifth district attorney, Milwaukee County's, was involved since the inception of this investigation in August 2012 and remains involved now.

3. The Court of Appeals held, among other points, that the John Doe investigation at issue here is not one consolidated proceeding, but rather is five John Doe proceedings running in parallel. So each of the district attorneys the petitioners propose to add has a stake in the outcome of this case. If this Court grants review, the outcome on the merits will determine whether the special prosecutor continues in his role leading the proceedings in all five counties, or whether the district attorneys in each county must resume their ordinary responsibilities as to such proceedings in their counties.

3

4. That is, if the petitioners are correct on the merits, the appointment of the special prosecutor was improper at the outset and is unsustainable now. Each of the five district attorneys would have to proceed without him and without the state Department of Administration shouldering much of the prosecutorial cost of these proceedings. Accordingly, these five district attorneys necessarily have an actual and non-speculative interest in the outcome of this case. That interest is distinct from the interests of all other parties.

WHEREFORE, the three Unnamed Petitioners suggest that this Court add the District Attorneys for Columbia, Dane, Dodge, Iowa, and Milwaukee Counties as respondents in this Court, if the Court grants the accompanying petition for review. Their names, respectively, are Jane Kohlwey, Ismael Ozanne, Kurt F. Klomberg, Larry E. Nelson, and John T. Chisholm.

Dated at Madison, Wisconsin, February 19, 2014.

Respectfully submitted,

Dean A. Strang
Wisconsin Bar No. 1009868
*Counsel for Unnamed Petitioner
No. 1*

STRANGBRADLEY, LLC
10 East Doty Street
Madison, Wisconsin 53703
[608] 535-1550
[608] 406-2602      facsimile

4

## ATTACHMENT D



OFFICE OF THE CLERK

### Supreme Court of Wisconsin

110 EAST MAIN STREET, SUITE 215
P.O. BOX 1688
MADISON, WI 53701-1688

TELEPHONE (608) 266-1880
FACSIMILE (608) 267-0640
Web Site: www.wicourts.gov

December 2, 2015

To:

Susan K. Raimer
Columbia County Clerk of Circuit Court
P.O. Box 587
Portage, WI 53901-2157

Carlo Esqueda
Dane County Clerk of Circuit Court
215 S. Hamilton St.
Madison, WI 53703

Lynn M. Hron
Dodge County Clerk of Circuit Court
210 W. Center Street
Juneau, WI 53039

Lia Gust
Iowa County Clerk of Circuit Court
222 N. Iowa Street
Dodgeville, WI 53533

John Barrett
Milwaukee County Clerk of Circuit Court
901 N. 9th St., Rm. G-8
Milwaukee, WI 53233

*Additional Parties listed on Pages 8-9

You are hereby notified that the Court has entered the following order:

Nos. 2013AP2504-2508-W    Three Unnamed Petitioners v. Peterson
                          L.C.#s2013JD11, 2013JD9, 2013JD6, 2013JD1 & 2012JD23
     2014AP296-OA            Two Unnamed Petitioners v. Peterson
                          L.C.#s2012JC23, 2013JD1, 2013JD6, 2013JD9 & 2013JD11
     2014AP417-421-W       Schmitz v. Peterson
                          L.C.#s2013JD11, 2013JD9, 2013JD6, 2013JD1 & 2012JD23

The court has before it a motion for limited intervention by two law enforcement officers, filed August 19, 2015, and a motion for limited intervention by a third law enforcement officer, filed September 3, 2015. The court also has before it a number of responses to these motions. Upon consideration of the above,

IT IS ORDERED that the motions are denied.

ANN WALSH BRADLEY and REBECCA G. BRADLEY, J.J., did not participate.

Nos.  2013AP2504-2508-W      Three Unnamed Petitioners v. Peterson
                            L.C.#s2013JD11, 2013JD9, 2013JD6, 2013JD1 & 2012JD23
      2014AP296-OA           Two Unnamed Petitioners v. Peterson
                            L.C.#s2012JC23, 2013JD1, 2013JD6, 2013JD9 & 2013JD11
      2014AP417-421-W        Schmitz v. Peterson
                            L.C.#s2013JD11, 2013JD9, 2013JD6, 2013JD1 & 2012JD23

N. PATRICK CROOKS, J., passed away while these motions were pending and prior to their final resolution by the court.

¶1      SHIRLEY S. ABRAHAMSON, J. (*dissenting*). The order denying the motions for limited intervention tells us nothing. It does not name the proposed intervenors, does not explain the proposed intervenors' interests, and does not describe the relief the proposed intervenors seek. A court's legitimacy depends on the reasoning for its decision.[1] Here the court does not reveal any facts or any reasoning.[2]

¶2      The proposed intervenors are two investigators and a law enforcement officer. One is named in the majority opinion. The others are named in various other documents.

¶3      A third motion for limited intervention filed by a district attorney and two assistant district attorneys on October 14, 2015, is not addressed in the order denying intervention.

¶4      The three proposed intervenors seek limited intervention to protect their interest in preserving documents and other materials acquired during the John Doe I and II investigations to the extent the materials are relevant to the proposed intervenors' interests in pending and future civil lawsuits.

¶5      The unaddressed motion for limited intervention filed by prosecutors raises the same interests as the other three proposed intervenors, seeks the same relief, and received the same response by the Unnamed Movants.

¶6      The Unnamed Movants oppose all the motions for limited intervention, arguing that the court should address the proposed intervenors' and prosecutors' interests not by granting intervention, but by clarifying Justice Gableman's July 16, 2015 majority opinion.[3] The per

---

[1]  See ¶¶90-91 of my concurrence/dissent to the per curiam denying the Special Prosecutor's motion for reconsideration.

[2]  Throughout my writing, I will refer to Justice Gableman's July 16, 2015 majority opinion as such or as "the majority opinion." The full citation is State ex rel. Two Unnamed Petitioners v. Peterson, 2015 WI 85, 363 Wis. 2d 1, 866 N.W.2d 165. I refer to today's per curiam opinion denying the Special Prosecutor's motion for reconsideration as "the per curiam."

[3]  Unnamed Movants Nos. 4 and 5 argue that the John Doe judge, not this court, should address the motions for intervention on remand. I address this argument in my separate writing from the court's denial of Unnamed Movants Nos. 4 and 5's motion for immediate remand.

Page 3
December 2, 2015
Nos.   2013AP2504-2508-W    Three Unnamed Petitioners v. Peterson
                           L.C.#s2013JD11, 2013JD9, 2013JD6, 2013JD1 & 2012JD23
       2014AP296-OA        Two Unnamed Petitioners v. Peterson
                           L.C.#s2012JC23, 2013JD1, 2013JD6, 2013JD9 & 2013JD11
       2014AP417-421-W     Schmitz v. Peterson
                           L.C.#s2013JD11, 2013JD9, 2013JD6, 2013JD1 & 2012JD23

curiam does not do so. Instead, the per curiam leaves the interests of the prosecutors and law enforcement officers entirely unrepresented in future proceedings relating to the John Doe trilogy.

¶7    I begin my analysis by repeating my ongoing concern that the court is maintaining too many filings under seal.[4] The limited intervention motions, along with every document filed in this court since Justice Gableman's July 16, 2015 majority opinion (except Justice Prosser's explanation of his refusal to recuse and the documents I have filed) have automatically been filed under seal without discussion, analysis or any court determination of the need for sealing, redacting, or opening a filing. Why the secrecy? No explanation.

¶8    Courts are supposed to exercise discretion in sealing and redacting filings. The automatic sealing of virtually all filings since July 16, 2015, without explanation raises significant First Amendment, state constitutional, statutory, and common law issues and may, if challenged, constitute error.[5]

¶9    The July 16, 2015 majority opinion mandated the destruction of "all copies of information and other materials obtained through the investigation."[6] Today, the per curiam denies the special prosecutor's motion for reconsideration but crafts an entirely new mandate. In effect, it stays the mandate of the majority opinion.[7]

¶10   I would grant the proposed intervenors' motions for limited intervention for the following reasons:

---

[4] I raised similar concerns in my concurrence to this court's December 16, 2014 order granting review of the consolidated John Doe cases and my concurrence/dissent to the per curiam denying the Special Prosecutor's motion for reconsideration. See ¶¶3-4 of my concurrence to the court's December 16, 2014 order; ¶¶84-91 of my concurrence/dissent to the per curiam denying the Special Prosecutor's motion to reconsider the majority opinion.

[5] See ¶¶84-91 of my concurrence/dissent to the per curiam denying the Special Prosecutor's motion to reconsider the majority opinion.

[6] See majority op., ¶135.

[7] Per curiam, ¶¶28-37. See ¶¶77-78 of my concurrence/dissent to the per curiam denying the Special Prosecutor's motion to reconsider the majority opinion.

Page 4
December 2, 2015
Nos.    2013AP2504-2508-W    Three Unnamed Petitioners v. Peterson
                             L.C.#s2013JD11, 2013JD9, 2013JD6, 2013JD1 & 2012JD23
        2014AP296-OA         Two Unnamed Petitioners v. Peterson
                             L.C.#s2012JC23, 2013JD1, 2013JD6, 2013JD9 & 2013JD11
        2014AP417-421-W      Schmitz v. Peterson
                             L.C.#s2013JD11, 2013JD9, 2013JD6, 2013JD1 & 2012JD23

1. First and foremost, the proposed intervenors meet the statutory requirements for intervention as a matter of right.[8] The proposed intervenors have acted promptly.[9] They do not seek to raise additional legal claims or defenses or otherwise continue the investigation. They seek merely preservation of materials from the investigation relevant to protecting their interests.[10]

2. Fairness and due process counsel in favor of granting the proposed intervenors' motions for limited intervention. The interests of the proposed intervenors are totally unrepresented in any future proceedings relating to the John Doe II trilogy. Today's per curiam limits the Special Prosecutor's authority to act with the exception of specific tasks assigned to him by the per curiam. The Special Prosecutor is not charged with seeking release of materials of interest to the proposed intervenors. The Unnamed Movants cannot be expected to and do not represent the proposed intervenors. In other words, after today's per curiam, who is left to argue on behalf of the proposed intervenors to preserve materials for a sufficient time to assist the proposed intervenors in civil litigation in which they have an interest?

3. The July 16, 2015 majority opinion (as well as Justice Ziegler's concurrence of that date) condemns the conduct of the prosecutors and law enforcement in executing

---

[8] See Wis. Stat. § 803.09(1) ("Upon timely motion anyone shall be permitted to intervene in an action when the movant claims an interest relating to the property or transaction which is the subject of the action and the movant is so situated that the disposition of the action may as a practical matter impair or impede the movant's ability to protect that interest, unless the movant's interest is adequately represented by existing parties."). See also Helgeland v. Wis. Municipalities, 2008 WI 9, ¶¶38-41, 307 Wis. 2d 1, 745 N.W.2d 1.

[9] See State ex rel. Bilder v. Delevan Twp., 112 Wis. 2d 539, 550, 334 N.W.2d 252 (1983) (noting there is "no precise formula to determine whether a motion to intervene is timely," but the critical factor is whether the proposed intervenor acted "promptly") (citation omitted).

The motions to intervene were filed approximately a month and a half after the court's July 16, 2015 decision mandating the destruction of the materials the proposed intervenors seek to preserve. Nor will intervention prejudice the other parties.

[10] Several media sources have suggested that additional civil litigation relating to both John Doe I and John Doe II is forthcoming. See, e.g., Collin Levy, The Wisconsin Targets Tell Their Story, Wall St. J., July 22, 2015; M.D. Kittle, John Doe Horror Stories: 'I felt completely helpless in my own home,' WisconsinWatchdog.org, July 23, 2015, available at http://watchdog.org/230683/john-doe-deborah-jordahl-raids/.

Page 5
December 2, 2015
Nos.    2013AP2504-2508-W      Three Unnamed Petitioners v. Peterson
                               L.C.#s2013JD11, 2013JD9, 2013JD6, 2013JD1 & 2012JD23
        2014AP296-OA           Two Unnamed Petitioners v. Peterson
                               L.C.#s2012JC23, 2013JD1, 2013JD6, 2013JD9 & 2013JD11
        2014AP417-421-W        Schmitz v. Peterson
                               L.C.#s2013JD11, 2013JD9, 2013JD6, 2013JD1 & 2012JD23

search warrants. No evidentiary basis or findings of fact about the execution of the search warrants exists in the record to support this condemnation. Now, these four justices deny the proposed intervenors the opportunity to preserve materials, including audio recordings that they assert reveal the truth about the execution of the search warrants. Does such a conclusion violate due process?

Materials from the John Doe I investigation have apparently proved probative. For example, in one federal civil rights case, Archer v. Chisholm, No. 15-cv-922-LA (E.D. Wis.), the use of released John Doe I materials has apparently caused a modification of the claims of abusive behavior by those who executed the search warrants. See Daniel Bice, Audio of John Doe raid contradicts claims by longtime Scott Walker aide, Milwaukee J. Sentinel, Aug. 4, 2015, available at http://www.jsonline.com/blogs/news/320568172.html; Scott Bauer, Audio contradicts Scott Walker aide's description of raid, Wis. State J., Aug. 4, 2015, available at http://host.madison.com/wsj/news/local/govt-and-politics/audio-contradicts-scott-walker-aide-s-description-of-raid/article_64e5ec3a-3b65-57e8-bc2c-f9a0dc37e505.html.

The per curiam hints that similar materials from the John Doe II investigation "could also potentially be available for use in related civil proceedings, if there is a request and a determination that such use is proper under the circumstances."[11] However, the per curiam does not assure that the materials will actually be available for use in related litigation, let alone that the materials will be preserved until the relevant statutes of limitations have run. Nor does the per curiam explain what form a "request" for access to the materials should take or what uses are "proper under the circumstances."[12]

¶11    Given the proposed intervenors' interests in preserving and accessing materials from the John Doe investigations, the uncertainty surrounding the per curiam's new mandate, and the absence of representation for the proposed intervenors in future proceedings, I would grant the motions for limited intervention.

¶12    Finally, I would address the motion for limited intervention filed by a district attorney and two assistant district attorneys——a motion the order does not address.

---

[11] Per curiam, ¶38.

[12] Per curiam, ¶38.

Page 6
December 2, 2015
Nos.  2013AP2504-2508-W      <u>Three Unnamed Petitioners v. Peterson</u>
                             L.C.#s2013JD11, 2013JD9, 2013JD6, 2013JD1 & 2012JD23
      2014AP296-OA           <u>Two Unnamed Petitioners v. Peterson</u>
                             L.C.#s2012JC23, 2013JD1, 2013JD6, 2013JD9 & 2013JD11
      2014AP417-421-W        <u>Schmitz v. Peterson</u>
                             L.C.#s2013JD11, 2013JD9, 2013JD6, 2013JD1 & 2012JD23


¶13    The district attorney and the two assistant district attorneys assert the same interests as the other petitioners for limited intervention—preserving documents acquired during the John Doe I and II investigations to the extent the documents are relevant to the prosecutors' interests in pending and future civil lawsuits.  Despite the per curiam decision's leaving the prosecution totally unrepresented in future proceedings relating to the John Doe II trilogy, the majority declines to address this motion.

¶14    The per curiam suggests that "one or more of the district attorneys" who are not and have never been parties to these cases "could seek to intervene in these actions, which would allow for the prosecution to be represented in future proceedings."[13]  The per curiam states that "such a motion to intervene by one or more of the district attorneys would receive prompt review by this court."[14]  Nonetheless, the per curiam offers no guarantee that such a motion will be granted.

¶15    The per curiam also does not address the effect of recent revisions to the John Doe statutes relating to the authority of the John Doe judges and prosecutors.  <u>See</u> 2015 Wis. Act 55; 2015 Wis. Act 64.  The revisions to the John Doe statutes may, depending on how they are interpreted, impair the ability of the prosecutors and other proposed intervenors to preserve or access materials relevant to pending and future lawsuits.

¶16    Unnamed Movant No. 2 filed a "notice of statutory changes" on October 28, 2015, informing the court of recent revisions to the John Doe statutes, 2015 Wis. Act 64 and 2015 Wis. Act 55.  In essence, the "notice" is a motion seeking relief.  Further illustrating that the "notice" is, in fact, a motion, Unnamed Movant No. 2 filed a reply, clarifying its positions regarding the statutory revisions and responding to the Special Prosecutor's arguments.

¶17    The position of the Unnamed Movants is that one of the statutory revisions terminates existing secrecy orders in John Doe I or John Doe II as to everyone except a judge, district attorney, other prosecutor, law enforcement officer, interpreter, or court reporter.  Unnamed Movant No. 2 also contends that various other statutory revisions affect the John Doe I and John Doe II investigations going forward, and as a result this court should grant the Unnamed Movants relief according to the terms of the statutory revisions.

_____

[13] Per curiam, ¶19.

[14] Per curiam, ¶19.

13

Page 7
December 2, 2015
Nos. 2013AP2504-2508-W     Three Unnamed Petitioners v. Peterson
                          L.C.#s2013JD11, 2013JD9, 2013JD6, 2013JD1 & 2012JD23
      2014AP296-OA         Two Unnamed Petitioners v. Peterson
                          L.C.#s2012JC23, 2013JD1, 2013JD6, 2013JD9 & 2013JD11
      2014AP417-421-W      Schmitz v. Peterson
                          L.C.#s2013JD11, 2013JD9, 2013JD6, 2013JD1 & 2012JD23

¶18    Judge Peterson and Judge Nettesheim have advised the court that they will take no further actions in either John Doe I or John Doe II unless this court determines further actions are appropriate.

¶19    Although the Special Prosecutor, district attorney, and two assistant district attorneys have responded to Unnamed Movant No. 2's motion, and Unnamed Movant No. 2 has filed a reply, the per curiam is silent regarding what modifications, if any, will be needed to the July 16, 2015 majority opinion and to the per curiam in light of the recent statutory revisions to the John Doe statutes and the related filings. Even though these issues are fully briefed and pending before the court, and may significantly impair the interests of the prosecutors and other proposed intervenors, the court leaves these and other important issues for another day. Does the majority plan to address the significant questions raised by the revisions to the John Doe statutes and related filings without any adversarial representation by the prosecution?

¶20    The four justices, by eliminating the Special Prosecutor, have painted themselves into a corner and now must find a way out. So far they have not done so.

¶21    For the reasons set forth, I dissent.

Diane M. Fremgen
Clerk of Supreme Court

14

Page 8
December 2, 2015
Nos. 2013AP2504-2508-W Three Unnamed Petitioners v. Peterson
L.C.#s2013JD11, 2013JD9, 2013JD6, 2013JD1 & 2012JD23
2014AP296-OA Two Unnamed Petitioners v. Peterson
L.C.#s2012JC23, 2013JD1, 2013JD6, 2013JD9 & 2013JD11
2014AP417-421-W Schmitz v. Peterson
L.C.#s2013JD11, 2013JD9, 2013JD6, 2013JD1 & 2012JD23

*Additional Parties:

Hon. Gregory A. Peterson
Reserve Judge

Matthew W. O'Neill/ Diane Slomowitz
Fox O'Neill Shannon
622 N. Water Street, Suite 500
Milwaukee, WI 53202

David C. Rice
Asst. Attorney General
P.O. Box 7857
Madison, WI 53707-7857

Francis D. Schmitz
P.O. Box 2143
Milwaukee, WI 53201-2143

Dean A. Strang
StrangBradley, LLC
10 E. Doty Street, Suite 621
Madison, WI 53703

Brad D. Schimel
Wisconsin Attorney General
P.O. Box 7857
Madison, WI 53707-7857

Todd P. Graves/ Edward D. Greim
Graves Garrett LLC
1100 Main Street, Suite 2700
Kansas City, MO 64105

Edward H. Meyers/ Philip J. O'Beirne
Julie O'Sullivan
Stein Mitchell Muse & Cippollone
1100 Connecticut Ave., NW, Suite 1100
Washington, DC 20036

Michael J. Bresnick
Venable LLP
575 Seventh St. NW
Washington, DC 20004

J. Denis Moran
Director of State Courts
P.O. Box 1688
Madison, WI 53701-1688

Dennis P. Coffey
Mawicke & Goisman, SC
1509 N. Prospect Ave.
Milwaukee, WI 53202-2323

Steven M. Biskupic/ Michelle L. Jacobs
Biskupic & Jacobs, S.C.
1045 W. Glen Oaks Lane, Ste. 106
Mequon, WI 53092

Sean O'Donnell Bosack
Godfrey & Kahn, S.C.
780 N. Water St., Ste. 700
Milwaukee, WI 53202-3512

Eric J. Wilson
Godfrey & Kahn, S.C.
P.O. Box 2719
Madison, WI 53701-2719

James B. Barton/ Timothy M. Hansen
John P. Shanahan
Hansen Reynolds Dickinson Crueger LLC
316 N. Milwaukee St., Ste. 200
Milwaukee, WI 53202-5885

15

Page 9
December 2, 2015
Nos. 2013AP2504-2508-W    Three Unnamed Petitioners v. Peterson
                         L.C.#s2013JD11, 2013JD9, 2013JD6, 2013JD1 & 2012JD23
     2014AP296-OA        Two Unnamed Petitioners v. Peterson
                         L.C.#s2012JC23, 2013JD1, 2013JD6, 2013JD9 & 2013JD11
     2014AP417-421-W     Schmitz v. Peterson
                         L.C.#s2013JD11, 2013JD9, 2013JD6, 2013JD1 & 2012JD23


H.E. Cummins
1818 N. Taylor St., Ste. 301
Little Rock, AR 72207

Jeffrey James Morgan
LeBell, Dobrowski & Morgan, LLP
309 N. Water St., Suite 350
Milwaukee, WI 53202

Hon. Gregory J. Potter
Wood County Courthouse
P.O. Box 8095
Wisconsin Rapids, WI 54494

Hon. James P. Daley
Rock County Courthouse
51 S. Main Street
Janesville, WI 53545-3951

Hon. James J. Duvall
Buffalo County Courthouse
P.O. Box 68
Alma, WI 54610-0068

Hon. Jeffrey A. Kremers
Milwaukee County Courthouse
901 N. 9th St.
Milwaukee, WI 53233

Thomas R. Cannon
O'Neil, Cannon & Hollman, S.C.
111 E. Wisconsin Ave., #1400
Milwaukee, WI 53202-4803

Michael D. Dean
Michael D. Dean, LLC
P.O. Box 2545
Brookfield, WI 53008

Richard M. Esenberg/ Brian W. McGrath
Wisconsin Institute for Law & Liberty
1139 E. Knapp St.
Milwaukee, WI 53202-2828

Susan M. Crawford
Cullen Weston Pines & Bach LLP
122 W. Washington Ave., #900
Madison, WI 53703

Christopher M. Meuler
Friebert, Finerty & St. John, S.C.
330 E. Kilbourn Ave., Ste. 1250
Milwaukee, WI 53202

Kevin J. Kennedy/ Nathan W. Judnic
Jonathan Becker
Wis. Government Accountability Board
212 E. Washington Ave., 3rd Floor
Madison, WI 53703

Matthew M. Fernholz
Cramer, Multhauf & Hammes, LLP
P.O. Box 558
Waukesha, WI 53187-0558

Douglas S. Knott/ Samuel J. Leib
Wilson Elser Moskowitz Edelman & Dicker LLP
740 N. Plankinton Ave., Ste. 600
Milwaukee, WI 53203

Jeffrey S. Fertl/ Tomislav Z. Kuzmanovic
Michael P. Russart
Hinshaw & Culbertson
100 E. Wisconsin Ave., #2600
Milwaukee, WI 53202-4115

## ATTACHMENT E



OFFICE OF THE CLERK

# Supreme Court of Wisconsin

110 EAST MAIN STREET, SUITE 215
P.O. BOX 1688
MADISON, WI 53701-1688

TELEPHONE (608) 266-1880
FACSIMILE (608) 267-0640
Web Site: www.wicourts.gov

December 2, 2015

To:

Susan K. Raimer
Columbia County Clerk of Circuit Court
P.O. Box 587
Portage, WI 53901-2157

Lia Gust
Iowa County Clerk of Circuit Court
222 N. Iowa Street
Dodgeville, WI 53533

Carlo Esqueda
Dane County Clerk of Circuit Court
215 S. Hamilton St.
Madison, WI 53703

John Barrett
Milwaukee County Clerk of Circuit Court
901 N. 9th St., Rm. G-8
Milwaukee, WI 53233

Lynn M. Hron
Dodge County Clerk of Circuit Court
210 W. Center Street
Juneau, WI 53039

*Additional Parties listed on Pages 8-9

You are hereby notified that the Court has entered the following order:

Nos. 2013AP2504-2508-W  Three Unnamed Petitioners v. Peterson
L.C.#s2013JD11, 2013JD9, 2013JD6, 2013JD1 & 2012JD23
2014AP296-OA  Two Unnamed Petitioners v. Peterson
L.C.#s2012JC23, 2013JD1, 2013JD6, 2013JD9 & 2013JD11
2014AP417-421-W  Schmitz v. Peterson
L.C.#s2013JD11, 2013JD9, 2013JD6, 2013JD1 & 2012JD23

The court has before it the "Motion of Unnamed Movants 4 and 5 for Immediate Remand to John Doe Judge and Joinder of Pending Responses."

Upon consideration of the foregoing,

IT IS ORDERED that the motion is denied.

ANN WALSH BRADLEY and REBECCA G. BRADLEY, J.J., did not participate.

Page 2
December 2, 2015
Nos.   2013AP2504-2508-W      Three Unnamed Petitioners v. Peterson
                             L.C.#s2013JD11, 2013JD9, 2013JD6, 2013JD1 & 2012JD23
       2014AP296-OA          Two Unnamed Petitioners v. Peterson
                             L.C.#s2012JC23, 2013JD1, 2013JD6, 2013JD9 & 2013JD11
       2014AP417-421-W       Schmitz v. Peterson
                             L.C.#s2013JD11, 2013JD9, 2013JD6, 2013JD1 & 2012JD23


N. PATRICK CROOKS, J., passed away while this motion was pending and prior to its final resolution by the court.

¶1      SHIRLEY S. ABRAHAMSON, J. (*concurring*).  Unnamed Movants 4 and 5 have filed a motion seeking immediate remand to John Doe Judge Gregory Peterson to decide several pending motions for intervention and for implementation of the mandate in the court's July 16, 2015 majority opinion.  The order denies the motion.

¶2      I write separately because the court does not explain the reasons for its order.  I try to do so.

¶3      Today, a per curiam opinion also denies the Special Prosecutor's motion for reconsideration but significantly modifies the majority opinion.  The per curiam replaces the "search and destroy" mandate in the court's July 16, 2015 majority opinion, which directed the "special prosecutor and the district attorneys involved in this investigation [to] cease all activities related to the investigation, return all property seized in the investigation from any individual or organization, and permanently destroy all copies of information and other materials obtained through the investigation."[1]   In place of the original "search and destroy" mandate, the per curiam orders the Special Prosecutor and the "prosecution team" to undertake a "clear and hold" mission, divesting themselves of the documents and electronic files from the John Doe investigations and submitting them under seal to the Clerk of the Supreme Court.[2]

¶4      In a separate order, two pending motions for limited intervention filed by two investigators and a law enforcement officer are denied.  A third motion for limited intervention filed by a district attorney and two assistant district attorneys is not addressed.

¶5      Given the per curiam, the orders released today, and other intervening events, I conclude remand to the John Doe Judge would be inappropriate for four reasons.

¶6      First, the per curiam's new "clear and hold" mandate seems to place this court, not the John Doe Judge, in a position to implement the new mandate.

¶7      Second, the court denies the motions for intervention by two investigators and a law enforcement officer, thus eliminating another possible reason for remanding to the John Doe Judge.  Namely, remand would allow the John Doe Judge and not this court to decide the

---

[1] Majority op., ¶135.

[2] Per curiam, ¶¶28-37.

18

Nos.   2013AP2504-2508-W    <u>Three Unnamed Petitioners v. Peterson</u>
                                      L.C.#s2013JD11, 2013JD9, 2013JD6, 2013JD1 & 2012JD23
            2014AP296-OA                <u>Two Unnamed Petitioners v. Peterson</u>
                                        L.C.#s2012JC23, 2013JD1, 2013JD6, 2013JD9 & 2013JD11
            2014AP417-421-W           <u>Schmitz v. Peterson</u>
                                          L.C.#s2013JD11, 2013JD9, 2013JD6, 2013JD1 & 2012JD23

motions for intervention and to determine whether and how to preserve or release materials as requested by the proposed intervenors.

¶8    Third, 13 sealed letters or e-mail chains communicating between Unnamed Movants, the Special Prosecutor, John Doe Judge Peterson (who presided over the John Doe II investigation), John Doe Judge Neal Nettesheim (who presided over the John Doe I investigation in Milwaukee County), and Patience Roggensack as Chief Justice in her "administrative capacity," remain unaddressed by this court.[3] For a list of the sealed filings since July 16, 2015, see Appendix A attached hereto.

¶9    Fourth, Unnamed Movant No. 2 recently filed a "notice of statutory changes" with this court, asserting, among other things, that recently enacted revisions to the John Doe statute preclude temporary reserve judges from presiding over John Doe proceedings.[4] John Doe Judge Gregory Peterson, through counsel, filed a letter advising the court that he will take no further action with respect to John Doe II unless and until this court determines that he may proceed. John Doe Judge Neal Nettesheim advised the court in the same letter that he too will take no further action with respect to John Doe I unless and until this court determines that he may proceed.

¶10    Motions were filed with John Doe Judge Peterson after the July 16, 2015 majority opinion was issued. John Doe Judge Peterson retains not only materials submitted to him after July 16, 2015, but also any motions and other materials filed with him after the record was transmitted to this court in January 2015.

¶11    The court does not address numerous questions relating to the authority of John Doe Judge Peterson and motions presently pending before him. Unless and until this court clarifies what effect, if any, the majority opinion of July 16, 2015, the per curiam, and the recent modifications to the John Doe statute have on John Doe I and John Doe II, remand would be futile.

¶12    Numerous questions will continue to dominate this court's work regarding John Doe II for a long time to come. Nevertheless, in view of the majority opinion, the per curiam, the order denying the motions for limited intervention, the sealed correspondence, Unnamed Movant No. 2's "notice of statutory changes," 2015 Wis. Acts 55 and 64, and John Doe Judge

---

[3] These sealed letters and e-mail chains were filed with the Clerk of the Supreme Court between August 7, 2015, and August 20, 2015. <u>See</u> Appendix A.

[4] <u>See</u> 2015 Wis. Act 64, § 4.

Page 4
December 2, 2015
Nos.   2013AP2504-2508-W     Three Unnamed Petitioners v. Peterson
                                     L.C.#s2013JD11, 2013JD9, 2013JD6, 2013JD1 & 2012JD23
                2014AP296-OA           Two Unnamed Petitioners v. Peterson
                                     L.C.#s2012JC23, 2013JD1, 2013JD6, 2013JD9 & 2013JD11
                2014AP417-421-W        Schmitz v. Peterson
                                     L.C.#s2013JD11, 2013JD9, 2013JD6, 2013JD1 & 2012JD23

Peterson's letter, I would deny the motion seeking immediate remand to John Doe Judge Peterson.

---

Diane M. Fremgen
Clerk of Supreme Court

Page 5
December 2, 2015
Nos.   2013AP2504-2508-W     <u>Three Unnamed Petitioners v. Peterson</u>
                             L.C.#s2013JD11, 2013JD9, 2013JD6, 2013JD1 & 2012JD23
       2014AP296-OA          <u>Two Unnamed Petitioners v. Peterson</u>
                             L.C.#s2012JC23, 2013JD1, 2013JD6, 2013JD9 & 2013JD11
       2014AP417-421-W       <u>Schmitz v. Peterson</u>
                             L.C.#s2013JD11, 2013JD9, 2013JD6, 2013JD1 & 2012JD23

## APPENDIX A: All Sealed Filings After 7/16/15

|     | Party or Sender | Document | Date Filed |
| --- | --- | --- | --- |
| 1. | Special Prosecutor | Motion for reconsideration, stay, or clarification of mandate | 8/4/15 |
| 2. | Unnamed Movant 2 | Letter to court | 8/6/15 |
| 3. | Unnamed Movant 2 | Letter to Chief Justice | 8/7/15 |
| 4. | Chief Justice | E-mail exchange | 8/7/15 |
| 5. | Unnamed Movant 7 | Letter to Chief Justice | 8/7/15 |
| 6. | Judge Neal Nettesheim | Letter to Chief Justice | 8/10/15 |
| 7. | Unnamed Movants 4 and 5 | Letter to Chief Justice | 8/10/15 |
| 8. | Unnamed Movant 7 (joined by Unnamed Movant 2) | Letter to Chief Justice | 8/10/15 |
| 9. | Special Prosecutor | Letter to Supreme Court Clerk | 8/11/15 |
| 10. | Unnamed Movant 2 | E-mail to Chief Justice | 8/12/15 |
| 11. | Judge Gregory Peterson | E-mail to counsel for Unnamed Movant 2 | 8/12/15 |
| 12. | Judge Neal Nettesheim | E-mail to Chief Justice | 8/12/15 |
| 13. | Unnamed Movant 1 | Response to motion for reconsideration | 8/13/15 |
| 14. | Judge Neal Nettesheim | E-mail to Chief Justice | 8/13/15 |

21

Page 6
December 2, 2015
Nos. 2013AP2504-2508-W    Three Unnamed Petitioners v. Peterson
                         L.C.#s2013JD11, 2013JD9, 2013JD6, 2013JD1 & 2012JD23
      2014AP296-OA        Two Unnamed Petitioners v. Peterson
                         L.C.#s2012JC23, 2013JD1, 2013JD6, 2013JD9 & 2013JD11
      2014AP417-421-W     Schmitz v. Peterson
                         L.C.#s2013JD11, 2013JD9, 2013JD6, 2013JD1 & 2012JD23

| 15. | Special Prosecutor | Letter to Justices of Supreme Court | 8/14/15 |
| 16. | Unnamed Movant 7 | Letter to Justices of Supreme Court | 8/14/15 |
| 17. | Unnamed Movants 2, 3, 6, 7, & 8 | Response to motion for reconsideration | 8/14/15 |
| 18. | Unnamed Movants 4 & 5 | Response to motion for reconsideration | 8/14/15 |
| 19. | Investigators | Motion for limited intervention | 8/19/15 |
| 20. | Special Prosecutor | Motion to strike portions of Unnamed Movants 2, 3, 6, 7, & 8's response to the motion for reconsideration or, alternatively, for leave to file a reply | 8/25/15 |
| 21. | Unnamed Movant 2 (joined by Unnamed Movants 7 & 8) | Response to motion for intervention | 8/28/15 |
| 22. | Unnamed Movants 4 & 5 | Motion for immediate remand to John Doe judge and joinder to response to motion for intervention | 8/31/15 |
| 23. | Unnamed Movant 3 | Letter joining response of Unnamed Movant 2 to motion for intervention | 8/31/15 |
| 24. | Law Enforcement Officer | Motion for limited intervention | 9/3/15 |
| 25. | Special Prosecutor | Reply in support of motion for reconsideration | 9/4/15 |

22

Page 7
December 2, 2015
Nos.   2013AP2504-2508-W      Three Unnamed Petitioners v. Peterson
                             L.C.#s2013JD11, 2013JD9, 2013JD6, 2013JD1 & 2012JD23
       2014AP296-OA          Two Unnamed Petitioners v. Peterson
                             L.C.#s2012JC23, 2013JD1, 2013JD6, 2013JD9 & 2013JD11
       2014AP417-421-W       Schmitz v. Peterson
                             L.C.#s2013JD11, 2013JD9, 2013JD6, 2013JD1 & 2012JD23

| 26. | Prosecutors | Motion for limited intervention | 10/14/15 |
| 27. | Unnamed Movant 2 | Opposition to motion for limited intervention | 10/22/15 |
| 28. | Unnamed Movant 2 | Notice of statutory changes | 10/28/15 |
| 29. | John Doe Judge (through counsel) | Letter re: 2015 Wis. Act 64 | 10/29/15 |
| 30. | Special Prosecutor | Letter re: Unnamed Movant No. 2's notice of statutory changes | 10/30/15 |
| 31. | Special Prosecutor | Response to Unnamed Movant No. 2's notice of statutory changes | 11/11/15 |
| 32. | Prosecutors | Supplemental memorandum in support of petition for limited intervention | 11/12/15 |
| 33. | Unnamed Movant No. 2 | Reply re: notice of statutory changes | 11/19/15 |

23

Page 8
December 2, 2015
Nos.   2013AP2504-2508-W     <u>Three Unnamed Petitioners v. Peterson</u>
                            L.C.#s2013JD11, 2013JD9, 2013JD6, 2013JD1 & 2012JD23
       2014AP296-OA         <u>Two Unnamed Petitioners v. Peterson</u>
                            L.C.#s2012JC23, 2013JD1, 2013JD6, 2013JD9 & 2013JD11
       2014AP417-421-W      <u>Schmitz v. Peterson</u>
                            L.C.#s2013JD11, 2013JD9, 2013JD6, 2013JD1 & 2012JD23


<u>*Additional Parties</u>:

Hon. Gregory A. Peterson
Reserve Judge

Matthew W. O'Neill/ Diane Slomowitz
Fox O'Neill Shannon
622 N. Water Street, Suite 500
Milwaukee, WI 53202

David C. Rice
Asst. Attorney General
P.O. Box 7857
Madison, WI 53707-7857

Francis D. Schmitz
P.O. Box 2143
Milwaukee, WI 53201-2143

Dean A. Strang
StrangBradley, LLC
10 E. Doty Street, Suite 621
Madison, WI 53703

Brad D. Schimel
Wisconsin Attorney General
P.O. Box 7857
Madison, WI 53707-7857

Todd P. Graves/ Edward D. Greim
Graves Garrett LLC
1100 Main Street, Suite 2700
Kansas City, MO 64105

Edward H. Meyers/ Philip J. O'Beirne
Julie O'Sullivan
Stein Mitchell Muse & Cippollone
1100 Connecticut Ave., NW, Suite 1100
Washington, DC 20036

Michael J. Bresnick
Venable LLP
575 Seventh St. NW
Washington, DC 20004

J. Denis Moran
Director of State Courts
P.O. Box 1688
Madison, WI 53701-1688

Dennis P. Coffey
Mawicke & Goisman, SC
1509 N. Prospect Ave.
Milwaukee, WI 53202-2323

Steven M. Biskupic/ Michelle L. Jacobs
Biskupic & Jacobs, S.C.
1045 W. Glen Oaks Lane, Ste. 106
Mequon, WI 53092

Sean O'Donnell Bosack
Godfrey & Kahn, S.C.
780 N. Water St., Ste. 700
Milwaukee, WI 53202-3512

Eric J. Wilson
Godfrey & Kahn, S.C.
P.O. Box 2719
Madison, WI 53701-2719

James B. Barton/ Timothy M. Hansen
John P. Shanahan
Hansen Reynolds Dickinson Crueger LLC
316 N. Milwaukee St., Ste. 200
Milwaukee, WI 53202-5885

Page 9
December 2, 2015
Nos.    2013AP2504-2508-W        Three Unnamed Petitioners v. Peterson
                                 L.C.#s2013JD11, 2013JD9, 2013JD6, 2013JD1 & 2012JD23
        2014AP296-OA             Two Unnamed Petitioners v. Peterson
                                 L.C.#s2012JC23, 2013JD1, 2013JD6, 2013JD9 & 2013JD11
        2014AP417-421-W          Schmitz v. Peterson
                                 L.C.#s2013JD11, 2013JD9, 2013JD6, 2013JD1 & 2012JD23


H.E. Cummins
1818 N. Taylor St., Ste. 301
Little Rock, AR 72207

Jeffrey James Morgan
LeBell, Dobrowski & Morgan, LLP
309 N. Water St., Suite 350
Milwaukee, WI 53202

Hon. Gregory J. Potter
Wood County Courthouse
P.O. Box 8095
Wisconsin Rapids, WI 54494

Hon. James P. Daley
Rock County Courthouse
51 S. Main Street
Janesville, WI 53545-3951

Hon. James J. Duvall
Buffalo County Courthouse
P.O. Box 68
Alma, WI 54610-0068

Hon. Jeffrey A. Kremers
Milwaukee County Courthouse
901 N. 9th St.
Milwaukee, WI 53233

Thomas R. Cannon
O'Neil, Cannon & Hollman, S.C.
111 E. Wisconsin Ave., #1400
Milwaukee, WI 53202-4803

Michael D. Dean
Michael D. Dean, LLC
P.O. Box 2545
Brookfield, WI 53008

Richard M. Esenberg/ Brian W. McGrath
Wisconsin Institute for Law & Liberty
1139 E. Knapp St.
Milwaukee, WI 53202-2828

Susan M. Crawford
Cullen Weston Pines & Bach LLP
122 W. Washington Ave., #900
Madison, WI 53703

Christopher M. Meuler
Friebert, Finerty & St. John, S.C.
330 E. Kilbourn Ave., Ste. 1250
Milwaukee, WI 53202

Kevin J. Kennedy/ Nathan W. Judnic
Jonathan Becker
Wis. Government Accountability Board
212 E. Washington Ave., 3rd Floor
Madison, WI 53703

Matthew M. Fernholz
Cramer, Multhauf & Hammes, LLP
P.O. Box 558
Waukesha, WI 53187-0558

Douglas S. Knott/ Samuel J. Leib
Wilson Elser Moskowitz Edelman & Dicker LLP
740 N. Plankinton Ave., Ste. 600
Milwaukee, WI 53203

Jeffrey S. Fertl/ Tomislav Z. Kuzmanovic
Michael P. Russart
Hinshaw & Culbertson
100 E. Wisconsin Ave., #2600
Milwaukee, WI 53202-4115